**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Richard Eugene GARCIA, Defendant-Appellant.**

No. 78–1195.

Colorado Court of Appeals, Div. III.

Nov. 13, 1980.

Rehearing Denied Dec. 4, 1980.

Certiorari Denied April 6, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Larry R. Martinez,

Linda E. Pipo, Asst. Attys. Gen., Denver, for plaintiff-appellee.

Brenman, Epstein & Zerobnick, P. C., Martin Zerobnick, Thomas D. Birge, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Richard Eugene Garcia, appeals his conviction of second degree murder and two counts of first degree assault. We affirm.

Garcia's conviction stems from a shooting incident which took place on November 27, 1977, outside a Denver bar. Garcia was one of a group of people in the bar watching a telecast of a football game. Richard Savage, Gilbert Lopez, and Doris Dietz entered and tried to play the jukebox. An argument arose over whether the music should be turned on during the game. A scuffle ensued, and several people, including Garcia, left the bar. Shots were fired outside, and as a result Lopez and Dietz were wounded and Savage was killed.

## I.

The first allegation of error concerns circumstances leading to Dietz' identification of Garcia at trial. After the shooting, three attempts were made to have her describe the person who had fired the gun. The first occurred in the hospital the morning after the shooting when two detectives tried to obtain from her a description of her assailant. They abandoned their efforts when it became apparent that Dietz was still feeling the effects of anesthesia.

After she was discharged, Dietz gave the detectives a sketchy description of the assailant. Based on this information, they prepared a photographic array. On the morning of Garcia's first scheduled preliminary hearing, Dietz viewed five photographs. She selected two of them; one was a photograph of Garcia. In the picture he had long hair and a mustache while at the time of the shooting, his hair was short and he was clean shaven. After viewing the photographic lineup, Dietz was standing in the hall outside the courtroom awaiting the start of the preliminary hearing when she saw Garcia, handcuffed and dressed in jail clothing, being brought in by uniformed officers. At that point, she stated that he was the man who had fired the shots.

Prior to trial, the court held an evidentiary hearing on a motion to suppress Dietz' in-court identification of Garcia. Garcia maintained that it resulted from unduly suggestive police procedures in conducting an out-of-court identification by the witness. In support of this contention, Garcia argued that Dietz' inability to identify him prior to having seen him in a highly suggestive setting indicated that her recognition of him was a product of the circumstances under which he was observed. Dietz, however, testified that her identification was based on her recollection of the shooting. The trial court found that she had an independent basis for her identification of Garcia, thus permitting her to identify him at trial.

As in *People v. Horne*, Colo., 619 P.2d 53, (1980), the suggestiveness of the out-of-court identification was assumed. In such cases, the test for determining admissibility of proposed in-court identification testimony is whether the totality of circumstances surrounding the witness' identification of the accused was so impermissibly suggestive, and thus conducive to irreparable mistaken identification, that the accused would be denied due process if the identification testimony were received. *People v. Horne, supra.* If so, the testimony must be excluded. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969); *People v. Roybal*, Colo. App., 609 P.2d 1110 (1979). However, even if the witness' identification was influenced by impermissibly suggestive circumstances, the witness may testify if he had a sufficient independent basis for the identification. *Sandoval v. People*, 180 Colo. 180, 503 P.2d 1020 (1972).

In determining the reliability of an independent source of identification, the factors to be considered include the witness' opportunity to view the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior

description of the criminal; the level of certainty demonstrated by the witness at the confrontation with defendant; and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976).

Here the trial court concluded that there was an independent source for Dietz' identification of Garcia. It stated that little significance could be attached to the inconclusive interview held shortly after her surgery. In addition, it found that she did give a description of defendant at the second interview. Furthermore, it determined that her difficulty in identifying defendant from a photograph which did not accurately depict his exact appearance on the date of the crime does not serve to weaken her subsequent identification. Finally, it believed her testimony that her in-court identification was based on her observations made during the occurrence of November 27, 1977.

■ While the trial court's findings do not address precisely all of the factors spelled out in *Neil v. Biggers, supra,* and *People v. Jones, supra; cf. Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978), there are sufficient specific findings with respect to the accuracy of the witness' prior description of Garcia, the primary issue in dispute. These findings are supported by the evidence. Consequently, this case differs from *Huguley v. People, supra,* where the trial court found the ultimate fact in issue but failed to make any findings of the basic, underlying facts necessary to support its conclusion. Thus, the findings are sufficient to sustain the admission of the identification testimony and it is unnecessary to remand for additional findings.

## II.

■ The second error asserted on appeal relates to the admission of a bullet allegedly removed during surgery on Dietz. It was identified at trial as having been fired from a gun found in defendant's house. The surgeon who operated on Dietz testified that he removed a bullet and gave it to operating room personnel, and a nurse who came on duty after the surgery testified that she had taken a bullet marked "Doris Dietz" from a locked narcotics cabinet, marked it, and forwarded it to the coroner. However, no evidence was offered to account for possession of the bullet from the time the physician released it until the time the nurse located it.

Thus, there is a break in the chain of custody, and defendant's objection to its admission should have been sustained. *See People v. Atencio,* 193 Colo. 184, 565 P.2d 921 (1977). Nevertheless, the erroneous admission of the bullet was harmless here in view of eyewitness testimony that defendant committed the crime. *See People v. Brown,* 192 Colo. 96, 555 P.2d 1163 (1976). The bullet itself was merely cumulative to the testimony of Dietz that Garcia had shot her.

## III.

■ The third contention of error concerns the admission of certain testimony during the course of the prosecution's case-in-chief. Prior to trial, the trial court entered an order requiring discovery. This order required the prosecution to produce the following:

"The names and addresses and any relevant written or recorded statements or summaries of statements, including any grand jury testimony, of any and all persons whom the prosecuting attorney has listed as witnesses on the information or indictment, or whom the prosecuting attorney intends to call at a hearing or trial . . . ."

Pursuant to this order, the prosecution furnished the defense with a list of witnesses which included the name Margaret Baca. The prosecution did not disclose the nature or scope of Baca's anticipated testimony. At trial when called as a prosecution witness in the case-in-chief, Baca testified that she had been an eyewitness to the shooting and identified Garcia as the perpetrator of the crime. Garcia objected, asserting that the prosecution had not complied with the

discovery order because he had not been apprised of the substance of Baca's expected testimony. Upon finding that Baca had not given a written or recorded statement prior to her appearance, the trial court determined that the district attorney had complied with the provisions of the discovery order and allowed the testimony to be received.

We do not interpret the discovery order as imposing an affirmative obligation on the prosecution to reduce the oral statements of anticipated witnesses to writing and to furnish the substance of their testimony to the defense. We note that the discovery order entered here comports with Crim. P. 16(I)(a)(1), which requires that the following material be provided:

> "The names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statement."

This rule specifically requires disclosure only of the substance of oral statements made by the accused, or, if a joint trial is to be held, by a co-defendant. Crim. P. 16(I), (II). This limitation on the disclosure of oral statements suggests that, aside from these specified situations, additional disclosure is not mandated. Imposition of a greater burden is not warranted where, as here, the prosecution has fulfilled its obligation to defendant pursuant to a valid discovery order in compliance with Crim. P. 16.

## IV.

Finally, Garcia urges reversal on the ground that he received an unfair trial because, at least twice during the proceedings, members of the jury had the opportunity to view him in the custody of sheriff's deputies and wearing handcuffs. The first time he was brought into the courtroom after *voir dire* commenced, because of confusion created by a change in courtrooms. A few days later, again by mistake, he was escorted to chambers by way of the courtroom after the jury had been seated. On both occasions, motions for mistrial were made and denied. Although Garcia contends that his right to a fair trial was compromised, we conclude that under the circumstances present here the trial court did not err in refusing to grant a mistrial.

■ Where, as here, a defendant has been accused of violent crimes, public safety may require that he be transported from jail to the courtroom in handcuffs. *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). In such instances, however, reasonable efforts must be made to prevent jurors from seeing the restraints. *People v. Cardwell, supra.*

Reasonable efforts were made in this case to insure that the jury did not see Garcia in handcuffs. In the incident that occurred during *voir dire*, confusion created by a last minute change in courtrooms resulted in Garcia being brought before the jury in handcuffs. The second incident was caused by a deputy sheriff being unfamiliar with the layout of the courtroom. Mistakes of this nature are unfortunate, and certainly steps should be taken to avoid them; however, only when exposure of a defendant in restraints to a jury is prejudicial is there reversible error. *See McLean v. People*, 172 Colo. 338, 473 P.2d 715 (1970); *Montoya v. People*, 141 Colo. 9, 345 P.2d 1062 (1959).

■ Here, there is no indication of such prejudice. The defendant's exposure to the jury in restraints was inadvertent and of short duration. As the trial court stated, the jurors were aware that defendant was in custody and that he had been accused of serious, violent crimes. Thus, there is no significant probability that his having been seen handcuffed and escorted by a deputy sheriff contributed to his conviction, and denial of the motion for mistrial was not error. *See McLean v. People, supra.*

The other contentions of error raised are without merit.

Judgment affirmed.

KELLY and KIRSHBAUM, JJ., concur.