The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jeffrey FISHBACK, Defendant–
Appellant.

No. 90CA0936.

Colorado Court of Appeals,
Div. III.

Dec. 5, 1991.

Rehearing Denied Jan. 9, 1992.

Certiorari Granted May 11, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert Mark Russel, First Asst. Atty. Gen., Deborah Isenberg Pratt, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Richard F. Thurston, (Solomon L. Leftin, on the brief) Denver, for defendant-appellant.

Opinion by Judge NEY.

Defendant, Jeffrey Fishback, appeals the trial court's judgment, entered on a jury verdict, convicting him of first degree sexual assault, second degree burglary, and mandatory sentence violent crime. His appeal presents an issue of first impression: Whether identification testimony premised on comparison testing of DNA (deoxyribonucleic acid) obtained from defendant is admissible. Because we find such testimony is admissible if a proper foundation is presented, we affirm the judgment of conviction. We also affirm the imposition of consecutive sentences.

The victim was subjected to forced sexual intercourse twice. The evidence linking defendant to the crime consisted of the victim's identification of defendant, fingerprint evidence, and expert testimony that DNA in seminal fluid obtained by a medical examination of the victim after the assault was identical to that in a blood sample obtained from defendant.

The trial court denied defendant's motion to suppress the DNA evidence because it concluded that the evidence was admissible either under the *Frye* test or under a relevancy/reliability determination as required by CRE 702.

## I.

Contrary to defendant's contention, we agree with the trial court that, under either test, the DNA identification testimony was admissible here.

## A.

For many years, admissibility of evidence emanating from a new scientific technique originally was determined by application of the standard announced in *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923). *People v. Anderson*, 637 P.2d 354 (Colo.1981). The *Frye* test requires courts to determine if the scientific basis of an opinion is founded on "well-recognized scientific principle or discovery [which has] gained general acceptance in the particular field in which it belongs."

Here, the director of the University of Colorado Health Sciences Center DNA Diagnostic Laboratory testified as an expert witness and presented a background on DNA testing. He testified that DNA is found in almost all cells of all animals and that it contains the "code" that governs not only an individual's genetic makeup but also all his or her physical characteristics as well.

DNA is composed of four organic bases, Adenine, Thymine, Cytosine, and Guanine, arranged along a cross-linked double helical structure. The specific arrangement of these bases along the double helix dictates the somatic characteristics of an individual. Over the past several decades, significant scientific resources have been invested in developing analytical tests to determine this precise structure.

Since members of the same species have many common features, most portions of DNA from members of that species are the same. However, hypervariable regions exist that are unique to the individuals in-

volved, and it is these regions that allow for the type of DNA comparison analysis at issue here. Expert witnesses testified that such DNA testing for forensic purposes was generally accepted in the scientific community.

Many state courts have found this type of testing to be reliable and, therefore, admissible. *Andrews v. State,* 533 So.2d 841 (Fla.Dist.Ct.App.1988); *Caldwell v. State,* 260 Ga. 278, 393 S.E.2d 436 (1990); *People v. Miles,* 217 Ill.App.3d 393, 160 Ill.Dec. 347, 577 N.E.2d 477 (1991); *Smith v. Deppish,* 248 Kan. 217, 807 P.2d 144 (1991); *Cobey v. State,* 80 Md.App. 31, 559 A.2d 391 (1989); *State v. Pennington,* 327 N.C. 89, 393 S.E.2d 847 (1990); *State v. Ford,* 301 S.C. 485, 392 S.E.2d 781 (1990); *Spencer v. Commonwealth,* 238 Va. 295, 384 S.E.2d 785 (1989).

However, not every state court has admitted DNA evidence. Notably, the Massachusetts court, in *Commonwealth v. Curnin,* 409 Mass. 218, 565 N.E.2d 440 (1991), reversed a defendant's convictions because it concluded that general acceptance of the procedure used by the testing laboratory was not demonstrated.

Likewise, in *People v. Castro,* 144 Misc.2d 956, 545 N.Y.S.2d 985 (Sup.Ct. 1989), the court, relying on the *Frye* test, refused the admission of DNA identification evidence because it found that the testing laboratory had failed to use generally accepted scientific techniques for obtaining reliable results with respect to that evidence.

The *Frye* test as analyzed by *Castro* provides a convenient three prong analysis to aid courts in determining whether to admit DNA evidence:

*Prong I.* Is there a *theory,* which is generally accepted in the scientific community, which supports the conclusion that DNA forensic testing can produce reliable results?

*Prong II.* Are there *techniques* or experiments that currently exist that are capable of producing reliable results in DNA identification and which are generally accepted in the scientific community?

*Prong III.* Did the testing laboratory perform the accepted scientific techniques in analyzing the forensic samples in this particular case?

In *People v. Hampton,* 746 P.2d 947 (Colo.1987), the Colorado Supreme Court indicated that, for admission of certain types of evidence, strict adherence to the *Frye* test is not required subsequent to the adoption of the Colorado Rules of Evidence. *See also Campbell v. People,* 814 P.2d 1 (Colo.1991) (admissibility of *non-scientific* evidence controlled by CRE 702, not the *Frye* test). However, since the scope of the *Hampton* rule is somewhat ambiguous, we choose to apply the *Frye* test here and conclude that the evidence here at issue is admissible under that restrictive test. See *People v. Banks,* 804 P.2d 203 (Colo.App.1990).

Here, prong I of the *Frye* test was satisfied by expert testimony showing that DNA testing is generally accepted in the community and that such DNA forensic testing can produce reliable results.

Prong II was satisfied because expert testimony indicated that techniques/experiments exist that are capable of producing reliable results in DNA identification which are generally accepted in the scientific community.

In that regard, testimony from the director of the DNA Diagnostics Laboratory, who is not affiliated with the laboratory that tested the DNA in this case, indicated that the methodology employed by the testing laboratory had been validated and generally accepted by the scientific community since the late 1970s and early 1980s.

Moreover, as to prong III, the witness received copies of the laboratory results, autorads (x-rays), discussed with the laboratory's personnel their methods, how they interpreted their results, and their quality assurance program and concluded that the methods employed by his own laboratory and the testing laboratory were the same. He opined that the results were of a very good quality and stated on cross-examination, "The DNA bands are a match. That's not up for interpretation."

This expert witness further testified that the DNA testing process was "fail-safe" and that if an error were to occur, it would produce a mismatch.

Therefore, the record supports the inference that Prong III was satisfied because the laboratory performed accepted scientific techniques in analyzing forensic samples in the present case.

Considering the tests so performed, an expert in population genetics and population biology testified that there was a probability of only one in 830,000,000 that someone other than the defendant would match the DNA found in the samples from the victim. And, she further testified that a majority of the scientific community is in agreement with the approach regarding sampling and statistical analysis that the laboratory here utilized.

In light of this supporting testimony, we conclude that the trial court properly denied defendant's motion to suppress.

## B.

■ CRE 702 provides a more lenient standard for the admission of opinion evidence than the *Frye* test in that it allows the admission of scientific evidence if such evidence will assist the jury in understanding the evidence or determining a fact at issue.

The identity of the perpetrator was a fact at issue in this case. One way of identifying a perpetrator is through DNA analysis. The previous discussion on DNA demonstrates that this evidence is very complex. Here, there was a reasonable basis for providing the jury with an explanation by opinion testimony of the methodology and DNA testing which was relevant and helpful to the jury.

DNA testing is recognized as an established method of identification, and its reliability may be distinguished from the voiceprint evidence which was rejected in *People v. Drake*, 748 P.2d 1237 (Colo.1988).

Accordingly, as the trial court ruled, the DNA identification testimony is also admissible under CRE 702. *See Campbell v. People, supra.*

## II.

■ Defendant next contends that the trial court committed reversible error in refusing to instruct the jury that, in assessing the value of the DNA identification testimony, it could consider that DNA technology is new. We disagree.

Relying on *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980), defendant asserts that the trial court had a duty to give all instructions requested by defendant to ensure a fair trial. However, *Hardin* merely stands for the proposition that trial courts have a duty to instruct the jury on all matters of law.

Here, the court instructed the jury that: "You have heard a witness testify as an expert. You are not bound by the testimony of an expert; the testimony is to be weighed as that of any other witness. It is entirely your decision to determine what weight shall be given the testimony."

Defendant's tendered instruction would have added, "in determining the weight whether (sic) the field of expertise of the expert is relatively a new field or an old established field."

While it is true that an instruction on defendant's theory of a case must be given if the record supports it, *People v. Fuller*, 781 P.2d 647 (Colo.1989), here, the newness of DNA testing was not presented as defendant's theory of the case instruction.

Upon examining the instruction in question, we conclude that the trial court did not abuse its discretion in refusing to include defendant's amendment to the instruction given.

## III.

■ Defendant asserts that the mandatory sentence count on the burglary charge and the consecutive sentence resulting therefrom were improper. Again, we disagree.

Section 16–11–309(5), C.R.S. (1986 Repl. Vol. 8A) mandates juries to determine if the accused used a deadly weapon during the commission of the crime or whether

serious bodily injury was caused by the defendant. If the trier of fact so finds, then the charged offense is a crime of violence and a penalty will be imposed in compliance with the provisions of the mandatory sentence statute.

The mandatory sentence statute, § 16–11–309(1)(a), C.R.S. (1991 Cum.Supp.), provides that if a person is convicted of two or more separate crimes of violence arising out of the same incident, then that person will be sentenced for such crimes so that the sentences are served consecutively. *See Robles v. People,* 811 P.2d 804 (1991).

The jury found that the burglary and sexual assault were crimes of violence. The court, therefore, correctly imposed consecutive sentences as provided under the mandatory sentence statute.

The judgment and sentences are affirmed.

METZGER and CRISWELL, JJ., concur.