The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Elliot Javay RAIBON, a/k/a Hollywood, Defendant–Appellant.

No. 89CA1126.

Colorado Court of Appeals, Div. IV.

June 4, 1992.

Rehearing Denied Aug. 6, 1992.

Certiorari Denied Jan. 11, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Twining, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Elliot J. Raibon, appeals from the judgment of conviction entered on a jury verdict finding him guilty of first degree murder. We affirm.

The defendant was a member of the "Crips" street gang. On the day of the killing, defendant and four other Crips gang members were driving in a residential neighborhood looking for members of the rival "Bloods" gang.

Late that evening, defendant saw a young man on a bicycle who was wearing a red baseball cap. Because red is the color adopted by the Bloods street gang, defendant assumed that this young man was a member of that gang.

He was not. Rather, he was simply a young university student on his way home from visiting his girlfriend.

After passing the student, defendant jumped out of the car and ran towards him. According to the testimony by the prosecution's witnesses, defendant shot the victim several times. The victim, however, managed to get up and started wrestling with the defendant. During this time, he was pleading for help and telling defendant that he was not a gang member. When defendant managed to disentangle himself from the victim, he shot the victim in the head, producing a fatal wound.

## I.

Defendant first asserts that the trial court erred by refusing to suppress statements made by him during an in-custody interrogation and by refusing to allow his parents to testify as to their recollection of the interrogation session. We disagree with both these contentions.

## A.

Defendant argues that the investigators' failure to videotape or audiotape his initial interview violated his rights under the due process clause of the Colorado Constitution, Colo. Const. art. II, § 25. We disagree.

When defendant, then 17 years old, was arrested, he was taken to the police station for interrogation. After his parents were notified and arrived at the jail, the police began to interrogate him. No verbatim record of this interrogation session was made.

The sole support for defendant's claim that this failure violated his right to due process rests upon two Alaska Supreme Court decisions. Both of these decisions, *Stephan v. State*, 711 P.2d 1156 (Alaska 1985) and *Mallott v. State*, 608 P.2d 737

(Alaska 1980), declared that the failure to record an interrogation session constituted a violation of the due process clause of the Alaska Constitution.

However, this view is not generally accepted. Although some state legislatures have adopted statutes mandating the recording of such statements, the majority of state courts which have considered this issue in response to a claim of a state constitutional violation have specifically rejected the Alaska court's conclusion. *See State v. Rhoades*, 119 Idaho 594, 809 P.2d 455 (1991); *Jimenez v. State*, 105 Nev. 337, 775 P.2d 694 (1989); *State v. Gorton*, 149 Vt. 602, 548 A.2d 419 (1988); and *Williams v. State*, 522 So.2d 201 (Miss.1988). In declining to interpret the Vermont Constitution as requiring that all interrogation sessions be recorded, the Vermont Supreme Court, in *State v. Gorton, supra,* concluded that, absent state legislation supplementing the rights set forth in the Vermont Constitution, it would not by "judicial fiat" prescribe such a requirement. We find that analysis appropriate here.

Further, while not considered in a constitutional context as such, this court has previously concluded that the prosecution is under no duty to reduce to writing statements made during the course of an interview with a witness. *People v. Graham*, 678 P.2d 1043 (Colo.App.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2660, 81 L.Ed.2d 366 (1984); *People v. Garcia*, 627 P.2d 255 (Colo.App.1980).

We recognize that the recording of an interview with either a suspect or a witness, either by audiotape or otherwise, may remove some questions that may later arise with respect to the contents of that interview. For that reason, it may well be better investigative practice to make such a precise record of any interview as the circumstances may permit. We decline, however, to mold our particular view of better practice into a constitutional mandate which would restrict the actions of law enforcement agents in all cases.

### B.

Defendant also argues that the trial court erred in not allowing his parents to impeach the detectives' testimony describing inculpatory statements made by defendant during his interrogation. He further contends that § 19–2–102(3)(c)(I), C.R.S. (1986 Repl.Vol. 8B), now codified as § 19–2–210(1), C.R.S. (1991 Cum.Supp.), tacitly requires that parents, irrespective of the rules of evidence, be permitted to testify with respect to all statements made by their child during an interrogation at which they were present. We reject both these arguments.

When defendant was initially arrested, the police notified his parents, and they were present during his later interrogation. The detectives testified that, on two occasions, defendant said that he "shot" the victim, but later corrected himself by saying that he had "shot at" the victim. The parents, on the other hand, did not recall defendant ever saying that he "shot" the victim, but rather, recalled him saying that, while he had a gun at the time of the confrontation with the victim, he had merely fired the gun in the air.

The People sought an *in limine* order that the parents could not refer to any statements made by the defendant during the interrogation session. While defendant complains that the trial court erred in granting the People's motion, the record shows that the trial court did not grant that motion, but rather refused to rule upon the issue in advance of the trial.

In addressing the motion, the court generally noted that, if the parents' testimony contradicted the detectives' testimony regarding defendant's alleged inculpatory statements, such testimony would be admissible as independent impeachment evidence. The trial court also suggested, however, that, if the parents sought to testify as to other statements made by the defendant, such statements, to be admissible, would have to fall within one of the exceptions to the hearsay rule. The trial court then specifically reserved its decision upon any particular testimony until such testimony was actually offered.

The record also demonstrates that the trial court did not, in fact, exclude any

of the parents' testimony. Despite the fact that the trial court had remarked generally that any testimony contradictory to that of the detectives would be admissible, the defendant did not attempt to elicit any such testimony from the parents at trial. Hence, defendant cannot predicate a claim of error upon the exclusion of testimony when such testimony was neither offered nor rejected. *See generally People v. Aragon,* 653 P.2d 715 (Colo.1982) (defendant cannot assert invalidity of statute if he does not offer evidence showing its applicability to him).

■ We also reject defendant's argument that § 19–2–210(1) allows a juvenile's parents to testify about everything said during an investigatory interrogation, irrespective of its inculpatory or exculpatory nature. This statute bars the admission of any statements made during a police interrogation unless the child's parents, guardian, legal custodian, or attorney are present when such are made. Its legislative purpose is to provide to the minor an opportunity to consult with a parent or guardian before deciding whether to assert or to waive his or her Fifth Amendment rights. *See People in Interest of G.L.,* 631 P.2d 1118 (Colo.1981); *People v. Knapp,* 180 Colo. 280, 505 P.2d 7 (1973). However, this statute does not render admissible testimony that is otherwise inadmissible under the rules of evidence.

## II.

Defendant next argues that the trial court erred in refusing to require the prosecutor to grant immunity to one of the eyewitnesses. He also contends this error was compounded by the trial court's refusal to instruct the jurors that they could draw an adverse inference from the People's failure to call this witness and by its refusal to allow defense counsel during final argument to comment upon this witness' absence. We disagree.

## A.

■ Our supreme court has expressly rejected the doctrine of court granted immunity. *Harding v. People,* 708 P.2d 1354

(Colo.1985); *see People v. Merrill,* 816 P.2d 958 (Colo.App.1991). Hence, the only immunity available to a witness is under § 13–90–118, C.R.S. (1987 Repl.Vol. 6A), which allows immunity to be granted by the trial court only upon the request of the People. And, the trial court possesses no authority to order the prosecutor to make such a request, nor does it have the authority, on its own, to grant immunity. *Harding v. People, supra; People v. Merrill, supra.*

■ Here, three of the four gang members who had accompanied defendant on the evening the victim was killed were granted immunity for their testimony. However, earlier that same evening, the fourth member had shot another individual and had been charged with aggravated assault. Because of the seriousness of this pending charge and the temporal proximity between that incident and the one at issue here, the People elected not to request that this witness be granted immunity.

Even if we assume that a trial court possesses the power to impose sanctions, including the dismissal of charges, in those instances in which a prosecutor, in an effort to distort the fact finding process, refuses to grant immunity to a witness who could provide vital, exculpatory evidence not available from any other source, such circumstances do not exist here.

First, defendant theorized that the non-immunized witness conspired with the immunized witnesses to shift the blame for the murder from him to defendant. Nothing within the record or within any other offer of proof, however, indicates that, if the non-immunized witness had testified, his testimony would have provided support for this theory or would have been beneficial to defendant in any other manner.

Further, there is no indication that the prosecutor attempted in any way to distort the fact finding process by refusing to grant immunity to this one witness. This nonimmunized witness had been identified as the gunman in an earlier shooting of an innocent motorist. In contrast, none of the other three witnesses had been identified

as direct participants in a violent crime. Thus, the decision by the prosecutor to grant immunity to three of the witnesses, but not to the fourth, was based upon a logical distinction between them.

### B.

We also disagree with defendant's assertion that the trial court erred in refusing to instruct the jurors that they could draw an adverse inference from the People's failure to present the testimony of the fourth gang member.

■ An instruction with respect to a missing witness is appropriate only if the witness' absence is due solely to the actions of the People. *People v. Bustos*, 725 P.2d 1174 (Colo.App.1986).

■ Here, the prosecutor did not prohibit the non-immunized witness from testifying. Rather, it was the witness' assertion of his Fifth Amendment rights, and not any action of the prosecutor, that prevented that testimony from being presented. And, this circumstance could not support an inference that the People had chosen not to have this witness testify because that testimony would be unfavorable to them. Under these circumstances, the trial court did not err in refusing to give an instruction of the nature requested.

### C.

Defendant's further contention upon this subject is that the trial court erred in refusing to allow defendant to comment on the absence of the non-immunized witness in his closing argument. We conclude that, even if we assume, purely arguendo, that the trial court's broad prohibition could be considered error, it was harmless.

■ In determining whether an error in a criminal trial is harmless, the proper inquiry is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Tevlin v. People*, 715 P.2d 338 (Colo.1986). If there is no reasonable possibility that the error contributed to the defendant's conviction or that it interfered with the trial proceedings,

it must be disregarded. *People v. Taylor*, 197 Colo. 161, 591 P.2d 1017 (1979).

■ The absence of the witness here was relevant, if at all, only to the extent that that absence supported defendant's conspiracy theory. Counsel for the defense, however, gave a detailed presentation of this theory to the jury during his closing argument. That this witness had not testified during the trial was obvious to everyone and certainly did not need to be specifically noted. Consequently, the trial court's refusal to allow defendant to state the obvious could not have contributed to defendant's conviction, nor did it affect the fairness of the trial.

### III.

■ Defendant's final contention is that he was improperly prohibited from impeaching one of the People's witnesses. According to defendant, he should have been allowed to refer to the witness' prior conviction of a juvenile offense, which would have been a felony had it been committed by an adult.

However, this argument was fully considered and rejected in *People v. D'Apice*, 735 P.2d 882 (Colo.App.1986). That opinion is dispositive of the defendant's contention here.

Judgment affirmed.

MARQUEZ, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

Defendant argues that the failure of the police officers to record electronically his confession violates his Due Process rights under the Colorado Constitution. I agree with this argument.

Here, a critical dispute arose over whether the defendant said he shot the victim or shot *at* him. The police officer testified that defendant confessed to shooting the victim, whereas defendant claims that he admitted only to shooting *at* the victim and that someone else actually shot and killed him. At the suppression hearing, the par-

ents testified that their son never told the officers that he shot the victim, but they did not so testify at trial.

In my view, the Due Process Clause of the Colorado Constitution requires that if, as here, a suspect is detained and questioned at a police station or similar detention place, then an electronic recording (or other comparably accurate recording process) of the conversation must be made or else the confession is inadmissible. In reaching this conclusion, I rely primarily on the reasoning of the Alaska Supreme Court in *Stephan v. State*, 711 P.2d 1156 (Alaska 1985).

The failure of the State to record and preserve a confession frequently results in losing essential parts thereof. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even a few hours after hearing a conversation, it is difficult for a person to present precise and accurate testimony about those recent statements. Therefore, testimony about confessions/interrogatories made in court weeks or months afterwards is inevitably incomplete and at least partially inaccurate. *See Stephan v. State, supra.* This inevitable fallibility of human memory can be rectified by a contemporaneous recording of the confession and related interrogation.

The evidence indicates that small, portable, and accurate recording devices are being increasingly used by law enforcement officers when statements are taken from witnesses and suspects. *See Stephan v. State, supra.* The present technology exists to record readily and accurately by both video and sound tapes the statements of witnesses and suspects. Indeed, when it is to the advantage of the police to record the actions or statements of suspects or witnesses, this is often done. *See Stephan v. State, supra.*

The courts are therefore presented with a situation in which the State, with only a minimal expenditure of effort and money, has the technical capability to preserve vital testimony and yet, as here, it chooses not to do so.

The major objective of our criminal justice system should be to arrive at the truth so that justice is done. As our supreme court so poignantly stated in *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979), a criminal case is not a game of foxes and hounds in which the state attempts to outwit and trap a quarry.

Furthermore, by confirming the content, legality, and voluntariness of a confession, a recording will, in many cases, actually aid law enforcement officers. In many situations, a recorded confession and advisement and waiver of constitutional rights will deter a defendant from changing his testimony or making false claims that his constitutional rights were violated. Certainly, such a recording will help the trial and appellate courts determine the truth and thus make more just decisions.

The primary argument against requiring law enforcement officers to record advisements and interrogations/confessions of defendants is that use of such devices may deter the suspect from making a statement. Since, under both the state and federal constitutions, an accused has a constitutional right to remain silent, and he must be informed of that right prior to a custodial interrogation, this argument is not persuasive. If the suspect refused to make a statement because he learned it was to be electronically recorded, this would probably indicate he mistakenly did not understand that non-recorded oral statements could be used against him. Furthermore, the State's interest in ascertaining the truth in order to do justice also answers this argument.

The absence of an electronic recording of a disputed confession gives an unfair advantage to the prosecution. The courts and juries are far more apt to accept a police officer's account of an interrogation than a conflicting one provided by a defendant. *See Harris v. State*, 678 P.2d 397 (Alaska Ct.App.1984) (Singleton, J., concurring and dissenting).

In addition to the Alaska Supreme Court in *Stephan v. State, supra*, others have also recognized the importance of recording custodial interrogations. *See Hendricks v. Swenson*, 456 F.2d 503 (8th Cir. 1972) (suggesting that videotapes of inter-

rogations protected defendant's rights and are a step forward in the search for truth); *Smith v. State,* 548 So.2d 673 (Fla.Dist.Ct. App.1987) (holding that the Due Process clause of the Florida Constitution requires a recording of custodial interviews); *Ragan v. State,* 642 S.W.2d 489 (Tex.Crim. App.1982); Tex.Code Crim.Proc.Ann. art 38.22 § 3 (Vernon 1979) (requiring that oral statements of the accused must be recorded in order to be admissible); *A Model Code of Pre-arraignment Procedure* § 130.4 (Official Draft 1975) (requiring sound recordings of custodial interviews). *See generally* Kamisar, *Foreword: Brewer v. Williams—A Hard Look at a Discomfiting Record,* 66 Geo.L.J. 209 (1977).

In relevant part, 10 Uniform Laws Annot., Model Penal Code § 243 (1974), states:

> The information of rights, any waiver thereof, and any questioning shall be recorded upon a sound recording device whenever feasible and in any case where questioning occurs at a place of detention.

The courts have recognized that Due Process requires the State to preserve essential evidence so that it can be examined, analyzed, and used by the defendant. *See California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *People v. Greathouse,* 742 P.2d 334 (Colo.1987). Furthermore, the court system is entitled to receive the best evidence available in order to resolve the serious criminal matters which come before it. A logical consequence of these principles is the need for the consistent systematic recording of all interviews conducted by police of a detained suspect.

Moreover, the concept of Due Process is not static. *See Stephan v. State, supra.* Due Process must change to accommodate ideas of what is necessary to provide fundamental fairness to a criminal defendant. In order to do this, the law must change to keep pace with new scientific and technological developments. *See People v. Fishback,* 829 P.2d 489 (Colo.App.1991).

In summary, I would hold that the Due Process clause of the Colorado Constitution mandates the electronic recording of any confession by, and the associated interrogation of, any suspect who is interviewed by police in a place of detention.