The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Raymond JOHNSON, Defendant–
Appellant.

No. 96CA1743.

Colorado Court of Appeals,
Div. III.

Dec. 10, 1998.

As Modified on Denial of Rehearing
Feb. 11, 1999.

Certiorari Denied Nov. 1, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John D. Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, C. Keith Pope, Deputy State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, Raymond Johnson, appeals from the judgment entered upon jury verdicts finding him guilty of two counts of first degree murder, one count of attempted first degree murder, two counts of burglary, and one count each of theft, first degree aggravated motor vehicle theft, and possession of a dangerous weapon. We affirm in part, vacate in part, and remand with directions.

## I.

■ Johnson first contends that his convictions must be reversed because the Colorado juvenile direct-file statute violates Colo. Const. art. VI, § 19. We disagree.

■ In reviewing the actions of the General Assembly, we presume that a statute comports with constitutional standards. Thus, the party challenging a statute on constitutional grounds bears the burden of establishing the statute's unconstitutionality beyond a reasonable doubt. *People v. Janousek,* 871 P.2d 1189 (Colo.1994); *Culver v. Ace Electric,* 952 P.2d 1200 (Colo.App.1997).

The direct-file statute in effect at the time defendant was charged, Colo. Sess. Laws 1996, ch. 283, § 19–2–805(1), the predecessor to § 19–2–517, C.R.S.1998, provided in relevant part:

(a) A juvenile may be charged by direct filing of an information in the district court or by indictment only when:

(I) The juvenile is fourteen years of age or older and is alleged to have committed a class 1 or class 2 felony. . . .

While Colorado's direct-file statute has previously been upheld under the equal protection clauses of the United States and Colorado Constitutions, *see People v. Hughes,* 946 P.2d 509 (Colo.App.1997), it has not been reviewed under Colorado's constitutional provision regarding uniformity of laws. This provision, Colo. Const. art. VI, § 19 provides, in pertinent part:

All laws relating to state courts shall be general and of uniform operation throughout the state, and except as hereafter in this section specified the organization, jurisdiction, powers, proceedings, and practice of all courts of the same class, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform.

Defendant contends that the direct-file statute violates this constitutional provision by creating circumstances that result in nonuniform treatment of similarly situated juveniles because it allows one juvenile to be tried as an adult in the district court while another, who is identically situated and statutorily indistinguishable, may remain in the juvenile system. Thus, according to defendant, the statute is not susceptible of a construction that would give it a uniform operation.

Defendant supports his argument by relying on the reasoning in *State v. Mohi,* 901 P.2d 991 (Utah 1995). In *Mohi,* the Utah Supreme Court held that the Utah direct-filing statute violated Utah's constitutional uniform operation of laws provision because the statute granted prosecutors "unbridled discretion" in choosing whether to file directly against a juvenile in district court or proceed against them in juvenile court. In an equal protection analysis, the court concluded that the direct-file provision treated individual offenders accused of the same offense differently and, thus, "operated disparately and nonuniformly on similarly situated juveniles." *State v. Mohi, supra,* 901 P.2d at 1004.

Despite defendant's argument, however, we find that the comparatively broad language of Utah's constitutional provision prevents *Mohi* from being persuasive authority in this case. Indeed, unlike the restrictive language of Colorado's constitutional provi-

sion, the Utah provision provides that *"all laws of general nature shall have uniform operation." See* Utah Const. art. I, § 24 (emphasis added).

This broad language has been interpreted by the Utah courts as embodying the same general principles as the Fourteenth Amendment. *See, e.g., Carrier v. Pro–Tech Restoration,* 944 P.2d 346 (Utah 1997). Thus, as is the situation in *Mohi,* the Utah courts have sustained equal protection claims based on this provision by finding that if "persons similarly situated" are not "treated similarly" or if "persons in different circumstances" are "treated as if their circumstances were the same," the law does not operate uniformly. *Malan v. Lewis,* 693 P.2d 661, 669 (Utah 1984). *See also Carrier v. Pro–Tech Restoration, supra* (equal protection challenge to rule of procedure decided under uniform law provision); *Board of Commissioners v. Petersen,* 937 P.2d 1263 (Utah 1997)(equal protection challenge to tax exemption brought under uniform law provision); *State in Interest of A.B.,* 936 P.2d 1091 (Utah App. 1997)(equal protection challenge to serious youth offender statute brought under uniform law provision); *Lee v. Gaufin,* 867 P.2d 572 (Utah 1993)(equal protection challenge to statute suspending limitations periods generally as to medical benefit claims of minors brought under uniform operation of the laws provision); *Greenwood v. City of North Salt Lake,* 817 P.2d 816 (Utah 1991)(equal protection challenge of animal control brought under uniform law provision).

■ Unlike Utah's provision, the Colorado provision regarding uniformity of laws was not adopted with the intent to provide an equal protection guarantee. Rather, the provision was adopted for the purpose of unifying the widely differing rules applicable in the various courts within Colorado's territorial government. *See Rogers v. People,* 9 Colo. 450, 455, 12 P. 843, 846 (1886), in which the supreme court observed:

> It is a well-known fact that under our territorial government, laws providing for the organization, jurisdiction and procedure of courts of the same grade were often widely different.... It is unnecessary to dwell upon the inconveniences and

evils resulting from such a condition of affairs, or to detail the advantages arising from uniformity in these respects throughout the state. The importance and value of such uniformity are obvious to all interested persons, particularly to all members of the bench and bar.

> It was doubtless with a view to preventing, under the new government, the existence of such mischievous confusion in this regard that said section 28 [now § 19] was adopted.

Thus, the restrictive language of the provision does not require uniformity in all laws, as does the Utah provision, but, rather, requires uniformity only in laws relating to the "organization, jurisdiction, powers, proceedings, and practice of all courts of the same class." Hence, the Colorado provision has been applied only in situations dealing with the uniformity of burdens and rights in courts of the same class. *See Raymond Lloyd Co. v. District Court,* 732 P.2d 612 (Colo.1987); *Sky Chefs v. City and County of Denver,* 653 P.2d 402 (Colo.1982); *Gold Star Sausage Co. v. Kempf,* 653 P.2d 397 (Colo. 1982).

Accordingly, because the plain language of the direct-file statute indicates that its mandates are to be applied uniformly across the state, and no more is required under Colo. Const. art. VI, § 19, we reject defendant's contention that the statute is unconstitutional.

## II.

Next, defendant contends that the trial court erred in not granting his motion for a mistrial. We disagree.

■ A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by any other means. Because the trial court is in a better position to evaluate any adverse effect that improper testimony might have upon a jury, it has discretion to determine whether a mistrial is warranted. Absent a gross abuse of that discretion and prejudice to the defendant, we will not disturb on review a trial court's decision to grant or deny a motion for a

mistrial. *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Price,* 903 P.2d 1190 (Colo.App.1995).

At trial, one of defendant's co-defendants testified against him as part of a plea agreement with the prosecution. In exchange for his testimony, that co-defendant was promised that he would receive a sentence between 16 and 70 years for his pleas of guilty on the charges of second degree murder and attempted first degree murder.

However, after the co-defendant testified, defendant brought to the attention of the court that, under recent amendments to the crime of violence statute, the co-defendant was actually subject to a minimum sentence of 32 years in prison for his guilty pleas. Based upon the prosecution's erroneous promise to the co-defendant of a minimum sentence of 16 years, defendant requested a mistrial, arguing that the illegal agreement was a result of prosecutorial misconduct and that it affected the fundamental fairness of the trial in violation of his due process rights. The court denied defendant's motion.

On appeal, defendant contends that the prosecution knowingly entered into the illegal plea agreement in order to obtain testimony which would secure a conviction and that such extreme and outrageous conduct violated his due process rights to a fair trial. We are not persuaded.

■ Colorado has recognized the due process claim of outrageous governmental conduct. *See Bailey v. People,* 630 P.2d 1062 (Colo.1981). Such conduct, which justifies the exercise of the courts' supervisory powers in dismissing a criminal case, is generally defined as that which violates fundamental fairness and is shocking to the universal sense of justice. *People v. Auld,* 815 P.2d 956 (Colo.App.1991).

■ However, as a statutory court, our review is limited to determining whether the trial court properly refused to dismiss this action based on alleged misconduct. *See People v. Bergen,* 883 P.2d 532 (Colo.App. 1994).

■ Here, the trial court found that the district attorney did not enter into the plea agreement in bad faith and, accordingly, rejected defendant's claim of misconduct. The record supports this finding, revealing that at the time the agreement was entered into, the amendments to the crime of violence statute had not yet been published, and that, during negotiation of the agreement, both parties had some confusion as to the correct mandatory minimum sentence. Although the prosecutor was apparently aware that there might be a problem with the agreement, the parties did not resolve that problem because both parties intended to abide by the agreement.

Under these circumstances, the trial court properly determined that the prosecutor's mistake in promising the co-defendant a lesser sentence than required under recent amendments did not rise to the level of conduct that is shocking to the universal sense of justice. *See People v. Auld, supra.*

■ Furthermore, defendant has failed to demonstrate prejudice resulting from the illegal plea agreement. Indeed, any prejudice resulting from the jury's misunderstanding of the plea agreement was cured by the presentation of testimony of the co-defendant that the plea had been restructured and that the count of attempted murder had been dismissed. Therefore, because the court was able to remedy any prejudice defendant may have suffered, it did not abuse its discretion in denying defendant's motion. *See People v. Abbott, supra.*

### III.

■ Defendant also contends that the trial court erred in denying his request to suppress a statement he made to police. We disagree.

Defendant first asserts that the statement should have been suppressed because the evidence was not sufficient to support the trial court's conclusion that defendant had waived his *Miranda* rights prior to making the statement.

The record, however, reveals that the interviewing detective showed defendant the advisement form and asked if he had previously been informed of and understood his rights. After defendant indicated that he

had been informed of his rights and understood them, the detective nonetheless went over each right with defendant for a second time. The detective also affirmed that defendant's guardian was aware of and understood defendant's rights. After the re-advisement, defendant indicated that he had "no problem" talking to the detective.

This evidence sufficiently supports the trial court's finding of waiver, and accordingly, we reject defendant's contention.

■ Secondly, defendant argues that the statement should have been suppressed because the detective's failure to videotape or audiotape his statement violated his due process rights under Colo. Const. art. II, § 25. However, as defendant concedes in his brief, this argument was previously considered and rejected by a division of this court in *People v. Raibon,* 843 P.2d 46 (Colo.App.1992). Accordingly, we do not reconsider the issue here but, instead, reject defendant's argument based on the same rationale expressed in *Raibon.*

## IV.

Next, defendant contends that the trial court erred in admitting out-of-court statements by two witnesses under CRE 801(d)(1)(B) because the witnesses' statements were made after they had the opportunity and motive to fabricate their statements. We disagree.

Generally, out-of-court statements cannot be used to bolster the trial testimony of witnesses. However, when a witness is subjected to an express or implied charge of recent fabrication, evidence of a prior consistent statement may be offered to rebut that charge, as long as the witness is subject to cross-examination concerning the statement. Such statements are not hearsay. CRE 801(d)(1)(B); *People v. Page,* 907 P.2d 624 (Colo.App.1995).

■ However, for such statements to be admissible under CRE 801(d)(1)(B), they must have been made before the alleged fabrication or improper influence or motive arose. *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995); *People v. Eppens,* 948 P.2d 20 (Colo.App.1997).

*But see People v. Segura,* 923 P.2d 266 (Colo. App.1995) (Jones, J. specially concurring); *People v. Koon,* 724 P.2d 1367 (Colo.App. 1086).

■ Here, the trial court admitted prior consistent statements of two witnesses. With respect to the first witness, the court found that he made the statement before his motive, cooperation from the district attorney's office, arose. The record supports the trial court's finding, for at the time the witness made the statement he had not been arrested but had approached the police voluntarily. Furthermore, there is no evidence to support defendant's argument that the witness was motivated to lie when he gave the statement because he thought he was being blamed for the crime. Accordingly, we reject defendant's contention as to this statement.

The second statement came from another witness, defendant's co-defendant. As to this witness, the trial court found that the statement was made before the witness was charged and before any plea bargain was made.

Nevertheless, defendant argues that his co-defendant had the motive to fabricate his statement after the police told him that if he told them the truth that he could "go home." However, the co-defendant testified that he talked to the detective not only because he thought he would go home but also because he believed he had not done anything wrong. He further stated that, after learning that defendant and another had "[given] him up," he became angry and started talking. Finally, the record reflects that co-defendant's motivation in testifying, *i.e.,* to obtain a light sentence, was the result of an agreement which came about several months after he gave his initial statement. Under these circumstances, we reject defendant's argument as to this statement as well.

## V.

■ Finally, defendant argues that he was erroneously convicted of two counts of first degree murder for the death of one victim. We agree.

The record reflects that defendant was convicted of both first degree murder after

deliberation and first degree murder with extreme indifference for the death of a single victim.

The People concede, and we agree, that the trial court here committed error in entering judgments of conviction on both guilty verdicts of first degree murder when both counts were based on the same victim and a single act. *See People v. Bartowsheski,* 661 P.2d 235 (Colo.1983). Accordingly, defendant's convictions and sentence for first degree murder cannot stand and the cause must be remanded for entry of a single first degree murder conviction in a manner that would give maximum effect to the jury's resolution of the issue. *See People v. Glover,* 893 P.2d 1311 (Colo.1995).

With the exception of defendant's convictions for first degree murder, the judgment is affirmed. Defendant's convictions for first degree murder are vacated, and the cause is remanded for further proceedings consistent with the views expressed herein.

Judge DAVIDSON and Judge RULAND, concur.