The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Timothy R. CASIAS, Defendant–Appellee.

No. 02SA230.

Supreme Court of Colorado, En Banc.

Dec. 16, 2002.

---

G.F. Sandstrom, District Attorney, Steven Fieldman, Deputy District Attorney, Robert R. Case, Deputy District Attorney, Pueblo, Colorado, Attorneys for Plaintiff–Appellant.

Michael S. Emmons, Pueblo, Colorado, Attorney for Defendant–Appellee.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this interlocutory appeal, the prosecution asks us to reverse a trial court order granting a motion to impose sanctions for destruction of evidence. Because no state destruction of evidence arises from the facts of this case, we reverse and remand.

## I. Facts

Timothy R. Casias is charged with Criminal Attempt to Commit First Degree Murder; Assault in the First Degree; and two counts of a crime of violence.[1] On October 16, 2001, three individuals armed with golf clubs confronted the victim in a park. The victim began fighting with one of the individuals when a fourth individual, the defendant Casias, joined the fight and shot the victim five times. The victim survived. The police arrested Casias after the victim and other witnesses identified him as the shooter.

---

1. § 18–2–101 and § 18–3–102(1)(a), 6 C.R.S. (2002); § 18–3–202(1)(a), 6 C.R.S. (2002); § 16– 11–309(2)(a)(I)(A), 6 C.R.S. (2002); § 16–11–309(2)(a)(I)(B), 6 C.R.S. (2002).

After the police arrested Casias, two detectives interviewed him at the police station. The police made audio and video recordings of the interview using recording equipment that was wired to the interview room but located in a separate room. A third detective, who did not participate in the actual interview, monitored the recording equipment. During the interview, Casias admitted to shooting the victim and stated that the shooting was in self-defense and in defense of his friends.

Later, the parties discovered that the recordings of the interview were unintelligible because one recording device had been set at the wrong speed and the other device had malfunctioned. Because these recordings were useless, Casias filed a Motion for Sanctions: Destruction of Evidence. The trial court granted the motion, ruling that the appropriate sanction for the detectives' inadvertent failure to properly record the interview was to suppress the statements in the recordings and to suppress the detectives' testimony regarding their recollections of those statements.

The People now appeal this ruling as a C.A.R. 4.1 interlocutory appeal, or, in the alternative, as a C.A.R. 21 original proceeding.[2] We clarify our jurisdictional basis for reaching the merits of this appeal before we analyze the substance of the trial court's ruling.

## II. Jurisdiction

■ Initially, we note that this case is an improper C.A.R. 4.1 interlocutory appeal. Our analysis in *People v. Braunthal,* 31 P.3d 167, 171–72 (Colo.2001), provides explicit guidance regarding supreme court jurisdiction over interlocutory appeals.[3] In *Braunthal,* we made clear that interlocutory jurisdiction is proper only when the ruling in question is made pursuant to Crim. P. 41(e) and (g) and Crim. P. 41.1(i), namely where evidence arises from an unlawful search and seizure, an involuntary confession or admission, or an improper non-testimonial identification. *Id.* at 171.[4]

C.A.R. 4.1 jurisdiction was not proper in *Braunthal* because the suppression of evidence arose from a ruling granting a motion for sanctions regarding the destruction of evidence, not from a Crim. P. 41(e),(g), or Crim. P. 41.1(i) motion. *Id.* at 172. Likewise, this appeal arises from Casias's Motion for Sanctions: Destruction of Evidence. The People attempt to argue that this appeal falls under Crim. P. 41(g) governing the suppression of involuntary confessions and admissions, but it is clear that this appeal does not arise from a motion to suppress. Casias

2. The People also cite to section 16–12–102(2), 6 C.R.S. (2002), as a possible basis for interlocutory jurisdiction, but do not raise any arguments regarding the statute or seek to distinguish between C.A.R. 4.1 and the statute. Because both parties rely on C.A.R. 4.1 and neither party addresses section 16–12–102, we do not consider the statute.

3. In *Braunthal,* the People sought review of a trial court's suppression of testimony relating to an incriminating segment of a videotape that the police inadvertently destroyed when a VCR "ate" that videotape. *Id.* at 171. Although the facts in *Braunthal* are distinguishable from those here, these factual distinctions do not affect our jurisdiction analysis.

4. C.A.R. 4.1(a) provides, in relevant part:
(a) **Grounds.** The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim. P. 41(e) and (g) and Crim. P. 41.1(i) made in advance of trial by the defendant for return of property and to suppress evidence or granting a motion to suppress an extra-judicial confession

or admission; provided that ... the appeal is not taken for purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.
Crim. P. 41(e) provides, in relevant part:
(e) **Motion for Return of Property and to Suppress Evidence.** A person aggrieved by an unlawful search and seizure may move the district court for the county where the property was seized for the return of the property and to suppress for use as evidence anything so obtained.
Crim. P. 41(g) provides, in relevant part:
(g) **Suppression of Confession or Admission.** A defendant aggrieved by an alleged involuntary confession or admission made by him, may make a motion under this Rule to suppress said confession or admission.
Crim. P. 41.1(i) provides, in relevant part:
(i) **Motion to Suppress.** A person aggrieved by an order issued under this Rule may file a motion to suppress nontestimonial identification seized pursuant to such order and the said motion shall be granted if there were insufficient grounds for the issuance or the order was improperly issued.

never contended that his statements in the recordings were either involuntary or that they were made in violation of his *Miranda* rights.

Our narrow reading of C.A.R. 4.1 is consistent with the longstanding principle that C.A.R. 4.1 "may not be used to 'piggyback' issues not embraced by that rule to obtain review of pre-trial evidentiary decisions." *People v. Lindsey,* 660 P.2d 502 (Colo.1983) (citing *People v. Morrison,* 196 Colo. 319, 583 P.2d 924 (Colo.1978)); *People v. McNulty,* 173 Colo. 491, 493, 480 P.2d 560, 561 (1971) (dismissing an interlocutory appeal of suppressed testimony given by police officers who witnessed the crime, because Crim. P. 41 "does not encompass motions for suppression of testimonial evidence"). Therefore, C.A.R. 4.1 interlocutory jurisdiction is improper here.

■ Despite our lack of jurisdiction under C.A.R. 4.1, we may still reach the merits of this appeal by exercising original jurisdiction under C.A.R. 21.[5] Exercise of our original jurisdiction is appropriate where the ruling in question "may have a significant impact on a party's ability to litigate the merits of a controversy" or where "an appellate remedy would not be adequate." *See Braunthal,* 31 P.3d at 172 (citing *Jones v. Dist. Ct.,* 780 P.2d 526, 528 (Colo.1989); *People v. Dist. Ct.,* 790 P.2d 332, 334–35 (Colo.1990)).

■ In this case, the trial court's suppression of Casias's statements, both in the faulty recordings and, more importantly, through the detectives' testimony, will significantly impede the prosecution's case. Furthermore, an appellate remedy would be inadequate because this case raises double jeopardy concerns—if the trial proceeds with wrongly suppressed evidence and Casias is acquitted, Casias may not be retried. *See People v. Dist. Ct.,* 793 P.2d 163, 166 (Colo.

1990) (citing *People v. Dist. Ct.,* 664 P.2d 247, 251 (Colo.1983).) Therefore, we find it proper to exercise our discretion under C.A.R. 21 to reach the merits of this appeal.

## III. Analysis

■ The trial court granted Casias's motion to impose sanctions for destruction of evidence, but no state "destruction of evidence" arises from the facts of this case. The situation at hand, involving failed recordings, is clearly distinguishable from a situation involving a recording that initially is intact and then later is destroyed by the police. *See, e.g., Braunthal,* 31 P.3d at 169–170. When a recording is intact, the police have a clear duty to preserve the recording if it contains material evidence. *Id.* at 173; *People v. Greathouse,* 742 P.2d 334, 338 (Colo.1987) (citing *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).

■ Here, the tapes were preserved. However, the recordings were unintelligible from the beginning because the recording equipment failed. The detectives did not actively render the tapes useless—their only action was to attempt to record the interview. Under these circumstances, no evidence was actually "destroyed." *Cf. People v. Ortega,* 672 P.2d 215, 219 (Colo.App.1983) (finding that no destruction of evidence occurred where photographs taken by police could not be developed, because "there was no evidence to destroy."). As in *Ortega,* the facts of this case indicate an imperfect collection of evidence, not the destruction thereof.[6]

■ In fact, the trial court did not find that an actual destruction of evidence occurred here. Rather, the court suppressed significant testimony solely on the basis that sanctions were warranted because the detec-

---

5. C.A.R. 21 provides, in relevant part:
   (a)(1) ... Relief under this rule is extraordinary in nature and is a matter wholly within the discretion of the Supreme Court. Such relief shall be granted only when no other adequate remedy, including relief available by appeal or under C.R.C.P. 106, is available.

6. In certain narrow situations, the failure to collect evidence may be tantamount to the suppres-

sion of evidence. *See Garcia v. Dist. Ct.,* 197 Colo. 38, 46, 589 P.2d 924, 930 (Colo.1979) (regarding the collection and preservation of breathalyzer. samples). We decline to extend *Garcia* to the facts of this case because police officers have no duty to record interviews. *People v. Raibon,* 843 P.2d 46, 48–49 (Colo.App. 1992); *see* discussion, infra.

tives should have properly recorded the interview.[7] Sanctions cannot be supported on such grounds. The established law is clear: police officers have no duty to record interviews with suspects. *People v. Johnson*, 987 P.2d 855, 860 (Colo.App.1998); *People v. Raibon*, 843 P.2d 46, 48–49 (Colo.App.1992) (holding that the failure to record an interview with a suspect does not violate that suspect's due process rights under the Colorado Constitution); *see also United States v. Yunis*, 859 F.2d 953, 961 (D.C.Cir.1988) (under federal law, "there is no constitutional requirement that confessions be recorded by any particular means"). Without a duty to record, we have no basis for punishing police officers who voluntarily but unsuccessfully attempt to record.

Furthermore, as a matter of policy, sanctions are not appropriate because we want to encourage, not discourage, the police from recording their interviews with suspects. We emphasize that recording interviews is good investigative practice, and we do not wish to place police officers in fear that a failed attempt to record will lead to the suppression of valuable evidence. *See Raibon*, 843 P.2d at 49.

■ As a final note, to the extent that the trial court's suppression of the detectives' testimony may be read as an evidentiary ruling as opposed to an improper sanction, we still find no legal grounds for the suppression of the detectives' testimony. Foundational concerns are met here because the detectives have personal recollections of the interview. *People v. Garcia*, 826 P.2d 1259, 1264 (Colo.1992) (holding that if the jury can reasonably find that the witness has personal knowledge of the event, the witness should be permitted to testify). As for the trial court's other two evidentiary concerns, namely that (1) the detectives' personal recollections of the interview are weak and (2) the recordings are not available for purposes of impeaching the detectives, neither concern justifies excluding the detectives' testimony which, of course, is subject to cross-examination with the jury left to resolve issues of credibility and weight. *See People v. Garcia*, 826 P.2d at 1264. In short, the record reflects no evidentiary rationale to justify the suppression of the detectives' testimony.

The trial court's decision to suppress both Casias's statements and the detectives' recollections of those statements is unsupported by fact or law. Therefore, the trial court's order is reversed, and the case remanded.

Justice COATS specially concurs.

Justice COATS, specially concurring.

While I too believe the trial court's order should be reversed before jeopardy attaches and preempts any effective remedy for the erroneous suppression of an extrajudicial confession in this case, I do not agree with the majority's conclusion that the prosecution lacks a right of interlocutory appeal under these circumstances. I do not agree with the majority's suggestion, *see* maj. op. at 855 n. 2, that separate statutory authorization for an interlocutory appeal should not be considered by us in the absence of express argument by the prosecution, or for that matter, that the prosecution failed to expressly invoke the authority of the statute in this case. I understand the majority's approach, however, to reserve for another day the question whether the General Assembly's 1986 adoption of section 16–12–102(2), 6 C.R.S. (2002), and its subsequent amendments to that statute, have broadened the right to an interlocutory appeal beyond that originally described in C.A.R. 4.1. I also note that in light of the decision to exercise this court's original jurisdiction and reverse the trial court's ruling anyway, the majority's jurisdictional analysis is wholly unnecessary to the resolution of the case before us.

I therefore concur in all but Section II of the majority opinion.

---

7. Because no actual destruction of evidence occurred here, the trial court erred by applying the three-pronged destruction of evidence standard set forth in *Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, and *Greathouse*, 742 P.2d 334.