**UNITED STATES of America, Appellee,**

v.

**William Bruce SNELENBERGER, Appellant.**

**No. 93–2148.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1994.

Decided May 12, 1994.

Charles A. Grossman (argued), Flint, MI, for appellant.

Mark C. Jones, Asst. U.S. Atty. (argued), Flint, MI (Alan M. Gershel, U.S. Atty., on the brief), for appellee.

Before: MILBURN and GUY, Circuit Judges; and TIMBERS, Senior Circuit Judge *.

TIMBERS, Senior Circuit Judge.

Appellant appeals from his April 2, 1993 conviction entered in the Eastern District of Michigan, Stewart A. Newblatt, District Judge, for threatening to murder a United States Administrative Law Judge in violation of 18 U.S.C. § 115(a)(1)(B) (1988).

We affirm.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On March 18, 1993, Snelenberger went to Genesee County Community Medical Health Department (GCCMHD) in Flint, Michigan, for treatment and a declaration that he was mentally disabled so as to acquire social security disability benefits. Sharon Carmichael, a psychotherapist at GCCMHD, met with him as part of an intake evaluation to determine if he needed treatment. During that interview, Snelenberger told Carmichael that on one occasion he had been shot in the leg and the lung, and on another occasion his father had shot him to prevent him from cutting his wife's throat. He also indicated that he had been stabbed three times in the past and showed Carmichael numerous wounds.

During the interview, Snelenberger also told Carmichael that he was upset because he had been denied social security disability benefits and that he was going to kill Administrative Law Judge John LaFalce for denying those benefits. In what Carmichael described as a calm tone of voice, Snelenberger told her that he had been waiting outside the judge's office for two days to kill him. He said that he had a hot temper and was not concerned with the judge's family. He said he would kill the judge if he got the chance to do so.

Based on her observation of Snelenberger during the interview, Carmichael decided to petition for involuntary hospitalization. She asked Snelenberger to stay in a waiting room in the custody of transporters Glen Thompson and Robyn Parker. While in the waiting room, Snelenberger told Thompson that he had tried to kill the judge for denying him social security disability benefits and referred to the judge as an S.O.B. A couple of hours later, while Snelenberger was outside a room at Hurley Medical Center in Flint, Parker asked him why he was being hospitalized. Snelenberger replied that he was going to kill the judge and showed her a copy of the paperwork reflecting the denial of social security disability benefits.

Meanwhile, Snelenberger contacted Judge LaFalce. Pursuant to Michigan's duty to warn law, Carmichael advised Judge LaFalce of Snelenberger's intention to kill him.

The next day, March 19, 1993, Snelenberger was released from Hurley Medical Center when a psychiatrist did not certify him as mentally ill and in need of hospitalization. That same day, F.B.I. Special Agent Jerome Nolan contacted Carmichael about the incident. Carmichael told him about her interview with Snelenberger. Nolan then contacted Snelenberger. After Nolan gave Snelenberger the *Miranda* warning, Snelenberger told Nolan that he had told the therapist that he should have killed Judge LaFalce. He told Nolan that he was upset that his plea for social security disability benefits had been denied. After admitting that he made the statements to the therapist, he reversed himself and told the agent that he had not articulated the statements to the therapist. When Nolan asked him if he intended to kill the judge, Snelenberger said "I don't think so".

Snelenberger was arrested and indicted on three counts of threatening to murder an Administrative Law Judge in violation of 18 U.S.C. § 115(a)(1)(B). This statute provides:

"Whoever threatens to assault, kidnap, or murder ... a United States judge, ... with intent to impede, intimidate, or inter-

---

* Honorable William H. Timbers, Senior United States Circuit Judge for the Second Circuit, sit- ting by designation.

fere with such ... judge ... while engaged in the performance of official duties, or with intent to retaliate against such ... judge ... on account of the performance of official duties, shall be punished as provided in subsection (b)."

At trial, Carmichael testified about the threats. She also testified about the past violent acts that Snelenberger had described and the past injuries he claimed to have sustained. Snelenberger was convicted on two of the three counts. One count on which he was convicted was based upon Snelenberger's communications with Carmichael. The other count was based upon his communications with Parker. He was sentenced to twenty-one months incarceration on each count to be served concurrently, plus three years supervised release on each count to be served concurrently, plus two $50 special assessments.

On appeal, Snelenberger contends that the court (1) erred in permitting Carmichael to testify over Snelenberger's objection that such testimony violated the psychotherapist/patient privilege, (2) abused its discretion in permitting Carmichael to testify as to Snelenberger's prior violent acts, (3) erred in concluding that Snelenberger's threats to murder Judge LaFalce made in the presence of different people at different times constituted separate offenses, and (4) erred in rejecting Snelenberger's proposed jury instruction.

We turn now to a consideration of Snelenberger's contentions.

## II.

### (A) THE COURT PROPERLY ADMITTED THE PSYCHOTHERAPIST'S TESTIMONY

Snelenberger contends that the statements that he made to the psychotherapist were privileged. He asserts that the court erred in allowing her to testify about both his threat to the judge and his description of his violent acts. He also asserts that she breached this privilege in speaking to the F.B.I. agent and the Assistant United States Attorney. We disagree.

The Federal Rules of Evidence do not provide an express privilege between psychotherapist and patient. Fed.R.Evid. 501. Although there is some disagreement between the circuits, we have held that there is such a privilege. *In re Zuniga,* 714 F.2d 632, 639 (6 Cir.), *cert. denied,* 464 U.S. 983 (1983).

■ The Michigan legislature created a *partial* exception to this privilege in the instance of a threat. In such a case, a therapist has a duty to do one or more of the following: (1) begin involuntary hospitalization; (2) communicate the threat to the person threatened and local or state police; (3) if the person threatened is a minor or incompetent, relay the threat to a guardian and social services. Mich.Comp.Laws § 330.1946 (1989). Clearly, the Michigan legislature intended to override this privilege in circumstances such as the instant case. We do not believe that the legislature intended that a judge should learn of the threat without having any recourse in a court of law to protect him or her from the person making the threat. Snelenberger's contention that Carmichael took a step beyond this exception by testifying at trial is without merit. We hold that the court properly admitted Carmichael's testimony regarding Snelenberger's threat.

■ Furthermore, we have held that, once a patient has disclosed the privileged information to a third party, the privilege regarding that information has been waived. *In re Zuniga, supra,* 714 F.2d at 640. Snelenberger waived his right to such privilege by telling the two transporters of his intent to kill Judge LaFalce. He further waived his privilege by acknowledging to the F.B.I. agent his threat, after receiving the *Miranda* warning.

■ A patient must assert the patient/psychotherapist privilege at the time of the communication in order to assert a valid claim of privilege. *Hancock v. Dodson,* 958 F.2d 1367, 1373–74 (6 Cir.1992). In this case, Snelenberger did not assert the privilege when speaking to Carmichael.

We agree with the court's holding that Carmichael's testimony was admissible at trial.

## (B) ADMISSIBILITY OF PRIOR VIOLENT ACTS

■ Snelenberger contends that the court abused its discretion in allowing Carmichael to testify as to Snelenberger's description of his prior violent acts. At issue is whether the testimony was relevant under Fed. R.Evid. 401 and, if relevant, whether its probative value was outweighed by its prejudicial effect under Fed.R.Evid. 403. The record establishes that the court weighed the relevance of the evidence and the purpose for its admission. We agree with the court that the evidence was relevant for evaluating whether a reasonable person would consider Snelenberger's comments as a threat to the judge's life. We also agree with the court that its probative value was not outweighed by prejudice.

We hold that the court clearly did not abuse its discretion in allowing such testimony.

## (C) SEPARATE OFFENSES

■ Snelenberger contends that Count I (the threat articulated to the therapist) and Count III (the threat articulated to the transporters) should have been collapsed into one count because the threats were uttered within the continuum of hospitalization. The government counters that the threats were made to two different people at two different times in two different places. Therefore, they were properly separated into two counts. We agree with the government. Snelenberger's reliance on *United States v. Sue*, 586 F.2d 70 (8 Cir.1978), and *United States v. U.C.O. Oil Co.*, 546 F.2d 833, 835 (9 Cir.1976), *cert. denied*, 430 U.S. 966 (1977), is misplaced. In those cases the different counts were based upon the submission of a single document.

## (D) JURY INSTRUCTION

Snelenberger contends that the court erred in denying his request for a jury instruction that defined a threat as a statement that reasonably might be expected to be communicated to the subject of the threat. Snelenberger asserts that the language of the statute and his constitutional rights to freedom of speech and privacy required the jury to consider whether he intended that the threats be communicated to the judge.

■ The court analyzed the statutory language in response to Snelenberger's request. The court held that the first part of § 115(a)(1)(B), which states that it is a crime for someone to threaten a judge "with intent to impede, intimidate, or interfere with such ... judge ... while engaged in the performance of official duties", requires that the threat-maker intend that the threat be communicated to the judge because the threat-maker wanted to influence the judge's action. The court held that the second part of the statute merely states that the threat be made with the intent to retaliate against the judge after the judge had acted. The court held that it was not required that the threat-maker intend that the threat should be communicated to the judge. Since Snelenberger's action fell within the second part of the statute, there was no need for an instruction such as he requested. We hold that the court's reading of the statute was entirely justified.

■ Snelenberger asserts that, if the statute does not require intent to communicate the threat, then the statute is unconstitutionally overbroad. His theory is that discussion between a therapist and patient is akin to writing personal thoughts in a diary. According to Snelenberger, if we were to make it a crime to utter such thoughts in that relationship, there would be an unconstitutional infringement of his freedom of speech and rights of privacy.

■ This argument, not having been raised in the district court, has been waived. *Chandler v. Jones*, 813 F.2d 773, 777 (6 Cir. 1987). Furthermore, since Snelenberger publicized his thoughts outside of the psychotherapist/patient relationship, the "diary" analogy is inappropriate. We reject Snelenberger's argument that the statute is constitutionally overbroad.

## III.

To summarize:

The court properly permitted a mental health therapist to testify at trial as to Sne-

lenberger's threats to murder Judge LaFalce and as to Snelenberger's prior violent acts. The court properly concluded that Snelenberger's threats made in the presence of different people at different times constituted separate offenses. The court also properly rejected Snelenberger's proposed jury instruction.

Affirmed.