2014 CO 50

**In re: The PEOPLE of the State of Colorado, Plaintiff,**

**v.**

**Randy Steven KAILEY, Defendant.**

**Supreme Court Case No. 13SA183**

Supreme Court of Colorado.

June 23, 2014

91

Attorneys for Plaintiff: Peter A. Weir, District Attorney, First Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado.

Attorneys for Defendant: Douglas K. Wilson, State Public Defender, Rachel Oliver, Deputy Public Defender, Golden, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

■ ¶ 1 This suppression case presents an issue of first impression for this Court. In this original C.A.R. 21 proceeding, we examine the scope of the "psychologist-patient privilege"[1] provided in section 13–90–107(1)(g), C.R.S. (2013), vis-á-vis the "duty to warn" provided in section 13–21–117(2), C.R.S. (2014).[2] We hold that if a mental health treatment provider believes, using his or her professional judgment, that statements made by a patient during a therapy session threaten imminent physical violence against a specific person or persons—and accordingly trigger the provider's "duty to warn"—the patient's threatening statements are not protected by the psychologist-patient privilege.

¶ 2 Accordingly, we also hold that the trial court erred when it excluded threatening statements made by a patient to a mental health treatment provider on the grounds that they were barred by the psychologist-patient privilege. We thus make the rule absolute and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 In 1985, Randy Steven Kailey was charged with two counts of aggravated incest. After a jury trial, he was found guilty and ultimately sentenced to thirty-two years in the Sterling Correctional Facility ("Sterling") in Sterling, Colorado.

¶ 4 In November 2012, Kailey met with Brian Willson, a psychologist candidate employed by the Colorado Department of Corrections ("DOC"), for a private therapy session at Sterling. At the outset of this therapy session, Willson reviewed an official DOC form with Kailey. This form provided that any statements Kailey made during the therapy session indicating that Kailey

---

1. This privilege applies not only to licensed psychologists but also to other mental health treatment providers, such as psychologist candidates, licensed social workers, and certified addiction counselors, and our holding is accordingly applicable to these providers as well. *See* § 13–90–107(1)(g), C.R.S. (2013) (listing the different types of mental health treatment providers subject to the privilege). We use the generic term "psychologist-patient" privilege here, however, for ease of reference. Additionally, we use the terms "mental health treatment provider" and "therapist" interchangeably to encompass the variety of service providers listed in section 13–90–107(1)(g). We also use the term "therapy" as a descriptive—rather than a limiting—term, encompassing the range of services offered by mental health treatment providers in the course of their professional employment.

2. The legislature amended section 13–21–117 in 2014, and although Kailey was charged in 2013 and thus the 2013 version applies in his case, we cite to the 2014 version to reduce confusion for future litigants. The 2014 amendment did not change the duty to warn in a significant way; instead, it simply reorganized the statute and added that the duty to warn also applies if threatened persons are "identifiable by their association with a specific location or entity." *See* § 13–21–117(2)(a).

intended to harm himself or others would not be considered confidential and would be disclosed to the DOC. During his session, Kailey allegedly made several statements about witnesses who had testified against him during his trial. Willson considered these statements to constitute serious threats of violence.

¶ 5 Section 13–21–117(2) provides that "where the patient has communicated to [a] mental health [treatment] provider a serious threat of imminent physical violence against a specific person or persons," a "duty to warn" arises. This duty is discharged when the provider makes reasonable and timely efforts to notify any person or persons specifically threatened, as well as notifies an appropriate law enforcement agency or takes other appropriate action, including but not limited to hospitalizing the patient. § 13–21–117(2)(b). Pursuant to his duty to warn, Willson submitted an "Incident Report" to the DOC describing Kailey's therapy session and quoting several of Kailey's alleged statements. In explaining why he submitted this report, Willson testified as follows: "According to what … I understand as a duty to warn, and also what [the] DOC requires us to do, and the disclosure form, … anything that's perceived as a threat to the facility or to the public is not considered confidential and needs to be reported."

¶ 6 The People subsequently charged Kailey with retaliation against a witness, a class-three felony, pursuant to section 18–8–706, C.R.S. (2013).[3] According to the People, Willson's Incident Report and his testimony formed the basis, in large part, for this charge.[4] Kailey moved to exclude Willson's testimony, contending that Kailey's statements to Willson were barred by the psychologist-patient privilege. That privilege provides that certain types of mental health treatment providers "shall not be examined without the consent" of the patient as to any communication made by the patient or advice given by the provider "in the course of professional employment." § 13–90–107(1)(g).

¶ 7 After a hearing, the trial court issued an oral order granting Kailey's motion to exclude Willson's testimony. It found that the duty to warn statute serves different purposes than the psychologist-patient privilege, reasoning that the duty to warn is designed to enhance public safety, whereas the psychologist-patient privilege encourages patients to be candid with their therapists. Accordingly, the trial court found that even if a mental health treatment provider warns threatened individuals and notifies law enforcement regarding threatening statements made in the course of a therapy session, the testimonial privilege remains intact.

¶ 8 The People petitioned this Court under C.A.R. 21 for review of the trial court's order, contending that the trial court erred when it found that Willson's testimony was inadmissible under the psychologist-patient privilege. We issued a rule to show cause why the trial court's order should not be vacated.

## II. Original Jurisdiction

¶ 9 Original relief pursuant to C.A.R. 21 is an extraordinary remedy that is limited both in purpose and availability. *People v. Darlington*, 105 P.3d 230, 232 (Colo.2005). Nevertheless, this Court exercises its original jurisdiction when the trial ruling in question may have a significant impact on a party's ability to litigate the merits of a controversy or when the normal appellate process would prove inadequate. *People v. Casias*, 59 P.3d 853, 856 (Colo. 2002).

¶ 10 We have previously held that the exercise of original jurisdiction is warranted when the wrongful suppression of evidence would significantly hinder the prosecution's case. *People v. Smith*, 254 P.3d 1158, 1161 (Colo.2011); *see also Casias*, 59 P.3d at 856 (concluding that original jurisdiction was

---

3. Section 18–8–706(1) provides that threatening a witness can qualify as "retaliation."

4. We emphasize that we do not hold that Kailey in fact made these alleged statements to Willson, nor that any of his statements constituted a

"threat" for the purposes of section 18–8–706. The trial court made no findings of fact regarding these issues; it only found that the psychologist-patient privilege applied and consequently barred any testimony from Willson.

warranted because the trial court's suppression of particular statements would "significantly impede the prosecution's case"). Here, the wrongful suppression of evidence pursuant to the psychologist-patient privilege could significantly impede the People's ability to prosecute Kailey, as Willson's testimony constitutes a critical part of the prosecutor's case.

¶ 11 Appellate review would be also be inadequate here because this case raises double jeopardy considerations; specifically, if the People proceed to trial without the benefit of Willson's testimony and Kailey is acquitted, jeopardy will attach and bar his retrial. See People v. Braunthal, 31 P.3d 167, 172 (Colo.2001) (concluding that appellate review of a suppression order would be inadequate because "although the People could appeal the trial court's order suppressing the evidence subsequent to the trial, [the defendant] could not be retried due to double jeopardy considerations"). Accordingly, the exercise of original jurisdiction is appropriate.

### III. Standard of Review

■ ¶ 12 Ordinarily, we review the trial court's exclusion of testimony for an abuse of discretion. See People v. Welsh, 80 P.3d 296, 304 (Colo.2003). However, because this case involves the interpretation of the psychologist-patient privilege and its interaction with the duty to warn, both statutory provisions, it presents questions of law that we review de novo. See L.A.N. v. L.M.B., 2013 CO 6, ¶ 13, 292 P.3d 942 (reviewing the interaction between the psychotherapist-patient privilege and the dependency and neglect statutes de novo); see also People v. Turner, 109 P.3d 639, 644 (Colo.2005) (reviewing the victim-advocate privilege de novo).

■ ¶ 13 In interpreting statutes, we ascertain and give effect to the legislature's intent—the polestar of statutory construction. State v. Nieto, 993 P.2d 493, 500, 502 (Colo.2000). If a statute is unambiguous, we give effect to the statute's plain and ordinary meaning and look no further. See Springer v. City & Cnty. of Denver, 13 P.3d 794, 799 (Colo.2000). "Although we must give effect to the statute's plain and ordinary meaning,

the General Assembly's intent and purpose must prevail over a literalist interpretation that leads to an absurd result." Lagae v. Lackner, 996 P.2d 1281, 1284 (Colo.2000). Additionally, when interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent. Martin v. People, 27 P.3d 846, 851–52 (Colo.2001).

### IV. Analysis

#### A. Background

■ ¶ 14 We begin our analysis by noting that statutory privileges are strictly construed, because they contravene the "fundamental principle" that the public has a right to every person's evidence. Petro–Lewis Corp. v. Dist. Court, Fourth Judicial Dist., El Paso Cnty., 727 P.2d 41, 43 (Colo.1986) (quoting Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)); see also DeSantis v. Simon, 209 P.3d 1069, 1073 (Colo.2009) (noting that because privileges "operate to withhold relevant information from a litigant, we exercise caution in determining whether the claimed protection exists"). Privileges exist as a matter of policy. See CRE 501 (noting that "privileges [are] recognized only as provided" and that absent a statutory or constitutional basis, no person has a privilege to, for example, refuse to be a witness, disclose any matter, or produce any object or writing). Ordinarily, relevant, competent, and properly authenticated evidence is admissible, but privileges—by definition—obstruct the search for truth. Kenneth S. Broun, McCormick on Evidence § 72 available on Westlaw (updated March 2013) [hereinafter McCormick].

■ ¶ 15 The sacrifice of relevant evidence in the case of testimonial privileges is "warranted by the social importance of [the] interests and relationships that the privilege seeks to protect." See People v. Sisneros, 55 P.3d 797, 801 (Colo.2002). The psychologist-patient privilege is one such circumstance. See § 13–90–107(1) (noting that statutory privileges exist because there "are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate"). Specifically, the psychologist-patient

privilege is designed to enhance the effective diagnosis and treatment of mental illness by preserving the " 'atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears' necessary for effective psychotherapy." *L.A.N.*, ¶ 14 (quoting *Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996)).

¶ 16 The duty to warn constitutes a legislative recognition, however, that mental health treatment providers must simultaneously serve another—sometimes conflicting—societal duty besides that of strictly maintaining patient confidentiality. Specifically, these providers have a duty to larger society to affirmatively *violate* patient confidentiality when an identified individual is at imminent risk of physical violence, and a breach of this duty to warn may lead to civil liability under section 13–21–117(2). *See* Hearings on H.B. 86–1201, H. Educ. Comm., 55th General Assembly, 2d Regular Sess. (Feb. 5, 1986, at 2:01 PM) (remarks of Rep. Groff, H. Sponsor) (stating that the duty-to-warn bill was necessary because "[u]nfortunately, [there have been some cases] where it was determined that perhaps ... mental health care professionals were not living up to their *societal duty* by not ... taking certain actions to warn and protect individuals ... when their patient was making a threat against another individual" (emphasis added)); *see also Tarasoff v. Regents of the Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 347 (1976) (concluding that "the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others," and therefore the "protective privilege ends where the public peril begins").

¶ 17 While virtually all jurisdictions have acknowledged some form of the duty to warn, various jurisdictions have nevertheless strenuously disagreed whether mental health treatment providers can testify about threatening statements made by their patients when these statements have been disclosed pursuant to the duty to warn. *See* Charles E. Cantu & Margaret H. Jones Hopson, *Bitter Medicine: A Critical Look at the Mental Health Care Provider's Duty to Warn in Texas,* 31 St. Mary's L.J. 359, 369–70 (2000). For example, in *United States v. Hayes,* 227 F.3d 578, 586 (6th Cir.2000), the Sixth Circuit Court of Appeals held that even if a mental health treatment provider warns potential victims and law enforcement about a patient's threatening statements, the provider is still barred from testifying about these statements in court. In contrast, in *United States v. Auster,* 517 F.3d 312, 317 (5th Cir. 2008), the Fifth Circuit Court of Appeals held that the testimonial privilege does not bar mental health treatment providers from testifying about threatening statements that the providers disclosed pursuant to their duty to warn.

¶ 18 We conclude that the Fifth Circuit's approach best harmonizes the legislature's sometimes-competing objectives in establishing the psychologist-patient privilege and the duty to warn. Specifically, we hold that threatening statements disclosed pursuant to that duty are not subject to the privilege because (1) such statements are not confidential as a matter of law, and (2) barring them would be inconsistent with legislative intent.

## B. Threats of Imminent Physical Violence Against a Specific Person Are Not Confidential as a Matter of Law, and Thus Are Not Privileged

¶ 19 The question before us is whether the psychologist-patient privilege may be claimed at all in cases in which a mental health treatment provider acts pursuant to the duty to warn. Because communications implicating the duty to warn are never confidential as a matter of law—and because confidentiality is required for the psychologist-patient privilege to attach in the first place—we conclude that the trial court erred in excluding Willson's testimony.

¶ 20 The Colorado Revised Statutes contain a comprehensive scheme regulating the provision of mental health services in Colorado. *See* §§ 12–43–101 to –805, C.R.S. (2013). When we read the plain language of that statutory scheme in harmony with the duty to warn, we conclude that threatening statements triggering the duty are not confiden-

tial as a matter of law. Section 12–43–218(1) provides a general rule that mental health treatment providers "shall not disclose, without the consent of the client, any confidential communications made by the client . . . in the course of professional employment." Significantly, however, the statute contains an exception to this general rule, stating that nothing in section 12–43–218 "shall be deemed to prohibit any other disclosures *required by law*." § 12–43–218(5) (emphasis added). Additionally, Colorado requires mental health treatment providers to inform patients that a patient's communications to the provider are "legally confidential . . . *except as provided in section 12–43–218* and *except for certain legal exceptions* that will be identified" by treatment providers. § 12–43–214(1)(d)(IV) (emphasis added). The duty to warn constitutes a "disclosure[ ] required by law" under section 12–43–218(5), and a "legal exception[ ]" to the confidentiality requirement under section 12–43–214(1)(d)(IV). As such, threatening statements that trigger the duty to warn are never confidential as a matter of law.[5]

¶ 21 That disclosures made pursuant to the duty to warn are not confidential is fatal to Kailey's privilege claim, because confidentiality is required in order for the psychologist-patient privilege to attach in the first place. *See* McCormick § 72 n.7 (noting that the first of four traditional conditions for any privilege to attach is that "communications must originate in a confidence that they will not be disclosed"); *see also* Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence: Evidentiary Privileges § 6.8, *available on* Westlaw (updated 2014) ("To warrant protection under a communications privilege . . . the testimony must concern a confidential communication."). Privileges exist as a matter of policy; the sacrifice of

relevant evidence is "warranted by the social importance of [the] interests and relationships that the privilege seeks to protect," *Sisneros*, 55 P.3d at 801 (internal quotation marks omitted), and confidentiality is inextricably tied to the policy rationale underlying the psychologist-patient privilege. The psychologist-patient privilege exists because confidentiality fosters trust and openness between the mental health treatment provider and the patient; in turn, this trust and openness foster effective treatment. *See L.A.N.*, ¶ 14; *see also Bond v. Dist. Court*, 682 P.2d 33, 38 (Colo.1984) (noting that confidentiality is uniquely important in the context of mental health treatment because while a "physical ailment may be treated by a doctor whom the patient does not trust, . . . if a psychologist or psychiatrist does not have the patient's trust, the therapist cannot treat the patient").

¶ 22 Additionally, in establishing the federal psychologist-patient privilege, the United States Supreme Court unambiguously limited the privilege to circumstances in which the patient's statements were made in confidence, holding that the "privilege covers confidential communications made to licensed psychiatrists and psychologists." *Jaffee*, 518 U.S. at 15, 116 S.Ct. 1923. Because patients are presumed to know[6] that treatment providers are required to disclose certain threatening statements, patients have no expectation that serious threats of imminent violence against specific individuals will be considered confidential. *Cf. Wesp v. Everson*, 33 P.3d 191, 197 (Colo.2001) ("Because the purpose of the [attorney-client] privilege is to encourage clients to confide in their attorneys, [the privilege] applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated

**5.** Given that the law requires certain disclosures, it makes good sense that the law also does not make the content of these disclosures confidential. For example, section 12–43–218(5), allowing for "disclosures required by law," protects mental health treatment providers who are legally required to affirmatively breach a patient's confidentiality in cases of child abuse. *See* § 19–3–304(1), –304(2)(n), –304(2)(p), C.R.S. (2013) (requiring mental health providers, among others, to report to law enforcement when they have "reasonable cause to know or suspect that a

child has been subjected to abuse or neglect or who has observed the child being subjected to circumstances or conditions that would reasonably result in abuse or neglect").

**6.** Under section 12–43–214(1)(d)(IV), mental health treatment providers are legally required to inform their patients, as Willson did here, that certain statements—including serious threats of imminent physical violence to specific individuals—are not confidential.

as confidential." (internal quotation marks omitted)).

¶ 23 In sum, because threatening statements are not confidential as a matter of Colorado state law, the psychologist-patient privilege does not attach to such statements. *See Auster*, 517 F.3d at 315 ("As a matter of law, where the confidentiality requirement has not been satisfied, the psychotherapist-patient privilege—as with other privileges—does not apply.").

## C. Barring Admission of a Therapist's Testimony Regarding Threatening Statements Would Also Be Inconsistent with Legislative Intent

¶ 24 In considering the effect of our holding, we also look to the legislature's policy objectives in establishing the privilege. We do so because we strictly construe testimonial privileges and accept them "to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means of ascertaining truth." *Petro–Lewis Corp.*, 727 P.2d at 44 (quoting *Trammel*, 445 U.S. at 50, 100 S.Ct. 906). Additionally, we wish to avoid the unnecessary injustice caused by an overly broad application of a testimonial privilege. *Cf. Cmty. Hosp. Ass'n v. Dist. Court,* 194 Colo. 98, 100, 570 P.2d 243, 244–45 (1977) (noting that "in many instances injustice can be caused" by an overly broad application of the physician-patient privilege).

¶ 25 While we fully recognize the importance of maintaining confidences to enhance an open therapeutic relationship between therapist and patient, once a therapist has acted pursuant to the duty to warn, continuing to bar his or her testimony no longer serves a transcendent public good and is accordingly inconsistent with the legislature's intent in enacting the privilege. *See United States v. Chase*, 340 F.3d 978, 996–97 (9th Cir.2003) (Kleinfeld, J., concurring) ("Once

disclosure is made, the patient *has lost the medical benefit* of being able to speak to his psychotherapist in confidence that what he says will remain secret." (emphasis added)).[7] Indeed, allowing therapists to testify about the same threats they are required to disclose pursuant to the duty to warn does little—if any—additional damage to the therapeutic relationship. Instead, the therapeutic relationship that underpins the privilege's existence is damaged when the therapist makes the initial disclosure pursuant to his or her duty to warn, *not* when the therapist testifies.

¶ 26 The psychologist-patient relationship is eroded at the point of disclosure—rather than at the point of testimony—for a few reasons. First, the *targets* of the threat are not required to preserve the confidentiality of the patient's statements, and in fact are unlikely to do so, if only because the targets wish to attempt to protect themselves by telling their friends, family, and coworkers to help them guard against potential danger. *See Auster*, 517 F.3d at 318 (noting that "there are likely mutual acquaintances between the target and the patient ... and the target will almost certainly tell the[se acquaintances that] ... there is a potentially serious problem with the patient and that everyone ought to be on the lookout for trouble").

¶ 27 Second, the patient is likely to be distrustful of his or her psychologist merely because the psychologist has already breached psychologist-patient confidentiality in exercising his or her duty to warn. *See id.* ("Now, the patient's target and deepest enemy, the person the deranged individual hates so much that he plans to kill him, knows the patient's secret.... If the therapist's professional duty to thwart the patient's plans has not already chilled the patient's willingness to speak candidly, it is doubtful that the possibility that the therapist might also testi-

---

7. We emphasize that this is *not* a case where Kailey told Willson that he was experiencing feelings of violence and anger toward the witnesses who had testified against him at trial, and that he wanted to seek treatment to avoid acting on these feelings. Rather, it is a case involving a real public peril because Kailey allegedly made statements that involved credible, imminent threats of violence against specific individuals, such that Willson felt that his duty to warn had been triggered.

fy in ... court will do so." (internal quotation marks and citation omitted)).

¶ 28 Third, the duty to warn also allows the mental health treatment provider to take "other appropriate action, including but not limited to hospitalizing the patient" if such efforts are required in the provider's reasonable professional judgment. *See* § 13–21–117(2)(b). While there is a legal difference between testifying in support of a patient's involuntary hospitalization proceeding and testifying against a patient in a criminal proceeding, that distinction is likely to be immaterial in affecting the patient's feelings of trust toward his or her mental health treatment provider. *See Auster*, 517 F.3d at 319 (noting that the differences between incarceration and involuntary commitment "likely do[ ] not matter much to the [person] committed .... [because] it is unlikely that many patients will be dissuaded from seeking therapy by the additional chance that, aside from being committed against their will because of what they say to their therapists, they may also be criminally incarcerated").

¶ 29 Moreover, silencing psychologists at the courthouse door would severely undermine the legislature's objectives in enacting the duty to warn. In deciding the scope of the psychologist-patient privilege, we must construe the privilege and the duty to warn *together* to further the legislature's overarching intent. *See Martin*, 27 P.3d at 851–52 (noting that when interpreting a comprehensive legislative scheme, we construe each provision to further the overarching legislative intent). Here, we conclude that this intent was to maintain confidentiality—but only to the extent that such confidentiality allows psychologists to protect the public consistent with their duty to warn. The existence of the duty to warn demonstrates that the therapeutic relationship is not the only value at stake. So is the prospective victims' safety.[8]

¶ 30 The duty to warn was designed to fill a kind of "gap" in public safety. Specifically, it requires mental health treatment providers to affirmatively act to warn potential victims of violence when patients may not be dangerous enough to be involuntarily committed at the precise moment a threat is made in a psychologist's office, but who may well be extremely dangerous. Allowing psychologists to testify after warning is a logical extension of the duty to warn. Such testimony ensures that victims of imminent threats can obtain protection, which is particularly important where the state has decided to prosecute the patient for making criminalized statements, or where the victim has attempted to protect him- or herself by seeking a protective order. *See United States v. Snelenberger*, 24 F.3d 799, 802 (6th Cir.1994) (holding that Michigan's duty-to-warn statute acted as a partial "exception" to the psychotherapist-patient privilege, because the court did not believe "that the legislature intended that a [victim] should learn of the threat without having any recourse in a court of law to protect [the victim] from the person making the threat"), *overruled by Hayes*, 227 F.3d at 586.

¶ 31 Indeed, the testimony of the mental health treatment provider may represent a victim's best hope to obtain real protection from potentially violent mentally ill individuals. As the facts of this case demonstrate, a psychologist or psychiatrist may be the only person who hears the threat directly from the patient, and thus is the only witness able to testify regarding the nature and extent of the threat, for example, in a hearing to obtain a protective order. The application of the privilege would accordingly thwart the objective of the duty to warn, which is to allow victims the opportunity to protect

8. We note that in debating the duty-to-warn legislation, the legislature received testimony from the Colorado Psychiatric Society opposing the creation of a duty on the grounds that the potential for disclosure of threatening statements could lead patients to conceal information about their "aggressive impulses, thus thwarting efforts to deal with [these impulses] in therapy." Colorado Psychiatric Society, *Summary of Position Statement on the Duty to Protect* 5 (1986) (submitted to the House Committee on Education, Feb. 5, 1986). That the duty-to-warn statute was enacted despite these concerns is an important indication of legislative intent. Specifically, in considering the tension between public safety and psychologist-patient confidentiality, the legislature struck the balance in favor of public safety, notwithstanding speculation that such a duty might harm therapeutic relationships.

themselves. The legislature simply did not intend to hamstring victims in obtaining legal protection from such serious threats.

¶ 32 Further, it is important to recognize that preventing mental health treatment providers from testifying as to charges relating to criminalized, threatening statements would be particularly problematic. *See Hayes*, 227 F.3d at 589 (Boggs, J., dissenting) (noting that it would make for an "odd spectacle" if an individual could make criminalized statements simply by seeking treatment from a therapist who has no opportunity to avoid facilitating the crime). Here, Kailey would likely entirely escape criminal prosecution simply because he conveyed the threat to the "right person"—specifically, a psychologist—while he could have faced prosecution had he communicated it to a friend, coworker, relative, or virtually anyone else. *See Auster*, 517 F.3d at 319 ("The public interest at stake in a criminal trial of any sort is substantial. . . . But the criminal issues that are raised by cases [involving the duty to warn] are of a more serious sort still, because the . . . duty does not come into play lightly. *Those cases are the ones that are the most serious,* so any marginal increase in the admissibility of probative evidence in criminal proceedings is especially valuable." (emphasis added)).

¶ 33 For the above reasons, we conclude that protecting threatening statements under the psychologist-patient privilege would undermine the legislative objectives animating the duty to warn and would do so without increasing the effectiveness of mental health treatment.

### D. The Psychologist–Patient Privilege Still Applies to Non–Threatening Statements

¶ 34 Although we hold that the psychologist-patient privilege does not apply where a patient has communicated a serious threat of imminent physical violence against a specific person or persons, we emphasize the limited nature of our holding. We only hold that the

psychologist-patient privilege does not apply as a matter of law when a mental health treatment provider believes that a patient's threatening statements are serious enough that the provider discharges the duty to warn. Other, non-threatening statements made in the course of mental health treatment remain privileged. *Cf. L.A.N.*, ¶ 16 (noting that the psychologist-patient privilege is only abrogated in the child abuse context to the extent that the communications form the basis of a child abuse report, but that the privilege is not abrogated as to other statements).

### V. Conclusion

¶ 35 We hold that when a mental health treatment provider is privy to threatening communications from a patient made in the course of therapy, and discharges his or her duty to warn, the threatening communications triggering that duty are not protected from disclosure under the psychologist-patient privilege. Such communications are not confidential as a matter of law and barring them from admission would contravene legislative intent.

¶ 36 Accordingly, we hold that the trial court erred in excluding Willson's testimony. We therefore make the rule absolute and remand to the trial court for proceedings consistent with this opinion.

JUSTICE MÁRQUEZ concurs in the judgment only.

JUSTICE MÁRQUEZ, concurring in the judgment.

¶ 37 The majority holds that the psychologist-patient privilege does not apply where a patient has communicated a threat that triggers a psychologist's "duty to warn" under section 13–21–117, C.R.S. (2013). Maj. op. ¶ 34. Importantly, it reasons that, as a matter of law, threatening statements are never confidential. Maj. op. ¶ 23. I agree with the majority that the trial court erred in excluding the psychologist's [1] testimony. However,

---

1. Although Kailey's mental health treatment provider in this case is a psychologist candidate, I use the terms "psychologist" and "psychologist-patient privilege" here for ease of reference. I use these terms to cover all mental health treatment providers covered under section 13–90–107(1)(g), C.R.S. (2013), including a psychologist candidate.

in my view, the majority's reliance on sections 12–43–214(1)(d)(IV) and 12–43–218(5), C.R.S. (2013), and its broad pronouncement that threatening statements are never confidential as a matter of law, are unnecessary to resolve this case. I would simply hold that the statements at issue in this case were not confidential because Kailey was repeatedly advised that any statement he made during therapy threatening to harm himself or others would not be considered confidential. In light of these advisements, Kailey had no reasonable expectation of confidentiality in any threatening communications he made, and thus, he cannot claim that the psychologist-patient privilege attaches to such communications.

## I.

¶ 38 The psychologist-patient privilege is codified in statute to protect communications between a patient and his mental health treatment provider. The privilege provides in relevant part that "a ... psychologist ... shall not be examined without the consent of the ... client as to any communication made by the client to the [psychologist]." § 13–90–107(1)(g), C.R.S. (2013).

¶ 39 We have previously stated that "[t]he purpose of the psychologist-patient privilege is to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused by the psychologist's disclosure of information divulged by the client during the course of treatment." *People v. Sisneros*, 55 P.3d 797, 800 (Colo.2002) (citing *Clark v. Dist. Court*, 668 P.2d 3, 8 (Colo.1983)). *See also Jaffee v. Redmond*, 518 U.S. 1, 10, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) ("[T]he psychotherapist-patient privilege is rooted in the 'imperative need for confidence and trust.'" (quoting *Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980))); *People v. Turner*, 109 P.3d 639, 643 (Colo.2005) ("An assumption of confidentiality is essential to fostering trust between the parties to the relationship.").

¶ 40 Because the purpose of the privilege is to engender trust and effective mental health treatment through confidentiality, I

agree with the majority that confidentiality is required in order for the psychologist-patient privilege to attach. Maj op. ¶ 21. Although section 13–90–107(1)(g) states that the privilege applies to "*any communication* made by a client to the [psychologist]," (emphasis added), section 13–90–107(1) expressly recognizes that preserving confidentiality is the reason for the privilege. Thus, the psychologist-patient privilege covers only confidential communications. *See Jaffee*, 518 U.S. at 15, 116 S.Ct. 1923 (holding that the "privilege covers confidential communications made to licensed psychiatrists and psychologists [, and] confidential communications made to licensed social workers in the course of psychotherapy"); *see also United States v. Auster*, 517 F.3d 312, 315 (5th Cir.2008) ("As a matter of law, where the confidentiality requirement has not been satisfied, the psychotherapist-patient privilege ... does not apply.").

¶ 41 Our case law in the attorney-client privilege context supports the notion that only confidential communications are privileged. The attorney-client privilege in section 13–90–107(1)(b), C.R.S. (2013), likewise applies to "any communication" made by the client to the attorney. Nonetheless, "[b]ecause the purpose of the privilege is to encourage clients to confide in their attorneys," *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001), we have construed the statutory attorney-client privilege to apply "only 'to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential.'" *Id.* at 197 (quoting *Lanari v. People*, 827 P.2d 495, 499 (Colo.1992)). Similarly, the purpose of the psychologist-patient privilege "is to encourage [patients] to confide in their [psychologist]." Thus, I would hold that the psychologist-patient privilege likewise applies only to "'statements made in circumstances giving rise to a reasonable expectation that the statements will be treated as confidential.'" *See id.*

## II.

¶ 42 In this case, Kailey's psychologist testified that at the outset of his therapy session with Kailey, he reviewed with Kailey a man-

datory disclosure form provided by the Department of Corrections. The psychologist stated that the disclosure form listed particular communications that are not covered by confidentiality, including "[t]hings like harm to self or others" or "danger to the community." He further testified that Kailey's file contained multiple disclosure forms that Kailey had signed. Thus, the record reflects that Kailey was advised that threatening statements made during therapy would not be confidential. Because Kailey had no reasonable expectation that such statements would be treated as confidential, he cannot claim a psychologist-patient privilege with respect to such statements.

¶ 43 In reaching this conclusion, I am particularly persuaded by the Fifth Circuit's decision in *United States v. Auster*, 517 F.3d 312 (5th Cir.2008). Although the majority cites to this case, it ignores the facts, and importantly, the Fifth Circuit's reasoning in that case. In *Auster*, the defendant stated in a therapy session that if his workers' compensation benefits were terminated, he would carry out a plan of "violent retribution" against a list of specific persons. *Id.* at 313. The defendant's therapist alerted the workers' compensation management company of the defendant's threat pursuant to the therapist's duty to warn, and the defendant was subsequently charged with extortion. *Id.* at 314. Although Auster had been repeatedly informed by his therapists that violent threats made during therapy would be communicated to his potential victims, he argued that his communications with his therapist were privileged. The Fifth Circuit determined that the federal psychotherapist-patient privilege articulated in *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), like Colorado's privilege, applies to confidential communications. *Auster*, 517 F.3d at 315. It reasoned that this confidentiality requirement was fatal to Auster's claim of privilege because Auster had been informed that his violent threats, although made during therapy, would be communicated to his potential victims. *Id.* Thus, "[Auster] had no 'reasonable expectation of confidentiality' ... in his threatening statement, and without such a reasonable expectation, there is no privilege." *Id.* at 316 (quot-

ing *United States v. Robinson*, 121 F.3d 971, 976 (5th Cir.1997)). The Fifth Circuit's reasoning applies to this case as well. Here, Kailey was repeatedly informed that threatening statements made during therapy would not be confidential. Because he had no reasonable expectation of confidentiality in such statements, he cannot claim that they are privileged.

### III.

¶ 44 Instead of looking to the advisement given to Kailey in this particular case, the majority concludes that any statement to a psychologist communicating an imminent threat of violence to a specific person or persons is never privileged, as a matter of law, regardless of whether the defendant has a reasonable expectation of confidentiality in such statements. Maj. op. ¶ 34. The majority's broad rule is unnecessary to resolve this case. Moreover, although a mental health provider has an obligation to notify a patient that statements made in therapy implicating the duty to warn will not be confidential, under the majority's rule, any warning to the patient becomes completely irrelevant. In other words, because such statements are never privileged, as a matter of law, a therapist who fails to inform his patient that such statements will not be confidential could still be required to testify against his client at a criminal trial if the client made a threatening statement—even if the patient had no reason to think that such statements to his therapist would not be confidential.

¶ 45 In concluding that threatening communications are not confidential as a matter of law for the purposes of the psychologist-patient privilege under section 13–90–107, C.R.S. (2013), the majority relies on the professional practice statutes governing mental health treatment providers in Title 12. Maj. op. ¶ 20. The majority construes section 12–43–218, C.R.S. (2013), to exempt threatening communications from the psychologist's confidentiality requirement provided under that section. Maj. op. ¶ 20. Even if section 12–43–218 can be read to contain such an exception, the majority's reliance on it is misplaced. Subsection (4) of that section expressly provides that the non-

disclosure requirements under that section do not apply "to any delinquency or criminal proceeding." Instead, in the context of a delinquency or criminal proceeding, a psychologist's confidentiality obligations are governed by section 13–90–107. § 12–43–218(4).

¶ 46 In short, the majority looks to a Title 12 provision, which by its own terms does not govern testimony at a criminal trial, to broadly hold that statements communicating an imminent threat of violence to a specific person or persons are never privileged, as a matter of law. Instead, I would resolve this case by looking to section 13–90–107 and related case law. Under this approach, I would hold that Kailey did not have a reasonable expectation of confidentiality as to threatening statements made during therapy because he had been repeatedly advised that such statements would not be confidential. Accordingly, I respectfully concur in the judgment only.