Opinion by JUDGE LICHTENSTEIN
¶ 1 Defendant, Felicia Michelle Moon, appeals the judgment of conviction entered after a jury found her guilty of criminal attempt to obtain a controlled substance by fraud or deceit. In this case, we are asked to determine an issue of first impression in Colorado, that is, whether a physician's prescription order, prior to its alleged alteration, falls within section 18-18-415(1)(b), C.R.S.2014, the statutory exception to privileged communications. We conclude that it does.
I. Background
¶ 2 A doctor wrote Moon a prescription order for six Vicodin pills. Moon later gave a pharmacy a prescription order for sixty Vicodin pills. A pharmacist called the doctor, who said that he had prescribed six pills to her, not sixty. Moon was subsequently charged, under section 18-18-415(1)(a), with criminal attempt to obtain a controlled substance by fraud or deceit, by the forgery or alteration of an order.[1] At trial, she testified that she received a prescription order from the doctor and gave it to the pharmacy, but she denied altering it. She was convicted as charged and sentenced to two years of probation.
¶ 3 On appeal, Moon contends that the trial court erred by (1) allowing her doctor to testify about, and admitting into evidence, privileged information; and (2) denying her request to remove a juror who revealed during trial that she knew a prosecution witness. We perceive no error.
*132 II. Physician-Patient Privilege
¶ 4 Moon contends that the trial court erroneously allowed her doctor to reveal information at trial that was protected by Colorado's physician-patient privilege. We disagree.
A. Trial Court Ruling and Challenged Evidence
¶ 5 Before jury selection, Moon invoked the physician-patient privilege. In response, the prosecutor told the court that she intended to elicit testimony from the doctor about the prescription order itself, but not Moon's statements that caused the doctor to write it. The court ruled that the anticipated evidence was not privileged in light of section 18-18-415(1)(b)'s statutory exception to privileged communications for persons who alter an order in an attempt to obtain a controlled substance by fraud or deceit. See § 18-18-415(1)(a).
¶ 6 The doctor testified that he wrote two prescription orders for Moon, one for antibiotic eyedrops and the other for six extra-strength Vicodin pills. The court admitted copies of the two original prescription orders contained in Moon's medical records, and it admitted the altered Vicodin prescription order that Moon gave to the pharmacist. The doctor did not reveal Moon's statements during the visit.
B. Standard of Review and Applicable Law
¶ 7 We review de novo a trial court's interpretation of a statutory privilege. People v. Trammell, 2014 COA 34, ¶ 9, 345 P.3d 945. Statutory privileges are strictly construed "because they contravene the fundamental principle that the public has a right to every person's evidence." People v. Kailey, 2014 CO 50, ¶ 14, 333 P.3d 89 (internal quotation marks omitted); see Hartmann v. Nordin, 147 P.3d 43, 49 (Colo.2006) ("Because it withholds potentially relevant information, we narrowly construe the physician-patient privilege.").
¶ 8 It is the legislature's prerogative to designate exceptions to the physician-patient privilege when it determines "there is an overriding public policy need for the information to become public." People v. Covington, 19 P.3d 15, 22 (Colo.2001) ; see also Clark v. Dist. Court, 668 P.2d 3, 9 (Colo.1983) (The legislature "may designate[ ] those situations to which a particular privilege does not apply.").
¶ 9 In interpreting statutes, our primary goal is to ascertain and give effect to the legislative intent. Hartmann, 147 P.3d at 49. We do so by first looking to the plain language of the statute. Id.
¶ 10 Section 13-90-107(1)(d), C.R.S.2014, defines Colorado's physician-patient privilege: "A physician, surgeon, or registered professional nurse ... shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient."
¶ 11 The physician-privilege describes the privilege as "information acquired in attending the patient." But even construed narrowly, this privilege is not limited to communications made by a patient to his or her doctor. People v. Marquez, 692 P.2d 1089, 1095 (Colo.1984) ("Information encompasses more than communications or statements made by the patient."), rejected on other grounds by James v. People, 727 P.2d 850, 855 n. 4 (Colo.1986).
¶ 12 Hospital and medical records fall within the scope of the physician-patient privilege. Devenyns v. Hartig, 983 P.2d 63, 66 (Colo.App.1998) ("[T]o the extent that plaintiff suggests that only statements made by a patient to her doctor, but not her medical records, are protected under § 13-90-107(1)(d), we note simply that hospital and medical records fall within the scope of the physician-patient privilege."); see Clark, 668 P.2d at 8 (mental health and associated alcohol and drug abuse treatment records are privileged under the physician-patient and psychologist-client privileges); see also People v. Dist. Court, 719 P.2d 722, 726-27 (Colo.1986) (construing the psychologist-patient privilege to cover all files or records derived or created in the course of treatment).
¶ 13 Neither the trial court nor the parties disputed that the doctor's original prescription *133 order was a medical record created in the course of treatment that-absent a statutory exception or waiver-was covered by the physician-patient privilege. See Alcon v. Spicer, 113 P.3d 735, 740-41 (Colo.2005) (examining the scope of the waiver of the physician-patient privilege "for all of [the plaintiff's medical] records and the past ten years of pharmaceutical records."). The only issue raised in the court, and on appeal, is whether the statutory exception to privileged communications in section 18-18-415(1)(b) applies to the doctor's original prescription order.
¶ 14 " Section 18-18-415(1)(b) operates as an exception to the physician-patient privilege found at [ section] 13-90-107(1)(d)." People v. Harte, 131 P.3d 1180, 1184 (Colo.App.2005). Section 1818-415(1)(b) provides that "[i]nformation communicated to a practitioner in an effort to procure a controlled substance other than for legitimate treatment purposes or unlawfully to procure the administration of any such controlled substance shall not be deemed a privileged communication."
¶ 15 Moon contends that subsection 415(1)(b) allows disclosure of a defendant's fraudulent statements but does not permit the disclosure of the contents of a defendant's medical file or treatment, because this statutory language describes the exception as "[i]nformation communicated to a practitioner." Moon was charged with committing the offense not by providing fraudulent or misleading information to her doctor, but by "the forgery or alteration of an order." § 18-18-415(1)(a). Thus, she argues the exception does not apply to the doctor's unaltered prescription order. We decline to adopt this interpretation of the exception.
¶ 16 " Section 18-18-415(1)(b) plainly and necessarily refers to the privileges established in [ section] 13-90-107(1)(d)." Harte, 131 P.3d at 1184. Thus, to effectuate the intent of the legislature, we construe the language of the statutory exception to the physician-patient privilege consistent with the construction of the language in the statutory privilege. See People v. Lage, 232 P.3d 138, 141 (Colo.App.2009) (when different statutes relate to the same subject matter, they are closely enough related to justify interpreting one in light of the other).
¶ 17 Reading the two statutes consistently, we conclude that the legislature intended that the exception apply to the doctor's unaltered prescription order. "[I]nformation acquired" by the doctor, in section 13-90-107(1)(d), extends beyond statements made by a patient to his or her doctor to include medical records created in the course of treatment. See Devenyns, 983 P.2d at 66. Likewise, we consistently construe "[i]nformation communicated to a practitioner" in an effort to procure a controlled substance, in section 18-18-415(1)(b), to extend beyond statements made by a patient to his or her doctor to include medical records created to procure a controlled substance, which a defendant uses in an effort to unlawfully procure the controlled substance. See Lage, 232 P.3d at 141.
¶ 18 We therefore conclude that the trial court correctly determined that section 18-18-415(1)(b) applies to the doctor's original prescription order for six extra-strength Vicodin pills.
III. Juror H.
¶ 19 Moon next contends that the trial court abused its discretion in denying her request to excuse Juror H., who revealed during trial that she knew the pharmacist. Because the record does not demonstrate that Juror H.'s relationship with the pharmacist caused her to be biased, we disagree.
A. Juror H.'s Disclosure
¶ 20 During jury selection, the court read a list of potential witnesses, including the pharmacist, and asked the jurors if they recognized any names on the list. No juror responded. But during the prosecution's case, Juror H. told the court that she recognized the pharmacist's name. The pharmacist had not yet testified when Juror H. revealed this information.
¶ 21 Juror H. said she knew the pharmacist only by her first name and did not recognize her name during jury selection. Juror H. had past prescriptions filled by the pharmacist and received flu shots at the *134 pharmacy involved in this case. She used the pharmacy two to three times a year, but it had "probably been a year" since she last saw the pharmacist. Juror H.'s son had also been friends with the pharmacist's son during elementary school, although the boys were in high school during the trial. Juror H. had encountered the pharmacist ten to fifteen times in her life; she described their interactions as "[p]olite, cordial, and friendly."
¶ 22 Juror H. said that she did not believe that her past encounters with the pharmacist would affect her ability to evaluate the pharmacist's credibility. She said that she would treat the pharmacist like any other witness. She further said that she would not feel uncomfortable if the defense asked her to discredit the pharmacist's testimony. She had not told any other jurors that she knew the pharmacist and agreed not to do so in the future. Ultimately, Juror H. thought she could be fair and impartial despite her relationship with the pharmacist.
¶ 23 After Juror H.'s disclosure, Moon moved for a mistrial since the court had not seated an alternate juror and she did not want Juror H. to remain on the jury. The court recognized that the pharmacist had filled Juror H.'s prescriptions, and that this case involved prescription fraud. Nevertheless, the court denied Moon's motion because Juror H.'s relationship with the pharmacist was not ongoing and Juror H. said that she could be fair and impartial despite knowing the pharmacist.
B. Standard of Review and Applicable Law
¶ 24 Because the trial court is in the best position to determine whether a juror is unable to serve, its decision not to excuse a juror will not be disturbed absent an abuse of discretion. People v. Christopher, 896 P.2d 876, 878 (Colo.1995).
¶ 25 A new trial may be required if a juror deliberately misrepresents or conceals information relevant to a challenge for cause or peremptory challenge. Id . But when a juror inadvertently fails to disclose such information, the defendant must show that the undisclosed fact demonstrates the juror's actual bias for the prosecution or against the defendant. Id . at 878-79. Absent this showing, we will assume that the juror followed the court's instructions and decided the case based on the evidence and the law. People v. Torres, 224 P.3d 268, 273 (Colo.App.2009).
¶ 26 When deciding whether to excuse a juror who failed to disclose information during jury selection, the trial court should consider: (1) the juror's assurance of impartiality; (2) the nature of the undisclosed information; (3) whether the juror deliberately withheld the information; (4) the prejudice to either party that the nondisclosure caused, including the defendant's right to exercise peremptory challenges; and (5) the practical remedies available when the information was revealed. Christopher, 896 P.2d at 879.
C. Analysis
¶ 27 We conclude that the trial court did not abuse its discretion in denying Moon's request to excuse Juror H. and declare a mistrial.
¶ 28 As Moon acknowledges, the record contains no evidence that Juror H. deliberately concealed her relationship with the pharmacist. Indeed, Juror H. said she did not recognize the pharmacist's name when the court read the witness list. And, as the court noted, Juror H. told the court when she realized that she knew the pharmacist.
¶ 29 The record does not reveal that Juror H. held any bias because of her past encounters with the pharmacist. Instead, she maintained that she could be fair and impartial, and said that her previous interactions with the pharmacist would not affect her ability to evaluate the pharmacist's credibility. As a result, the trial court did not abuse its discretion in allowing her to remain on the jury. See id . at 880 ("[T]he trial court did not abuse its discretion in determining not to replace [the challenged juror] with an alternate juror since the juror was able to fairly evaluate the credibility of [the witness's] testimony and could reach an impartial verdict based on the evidence.").
*135 ¶ 30 The nature of Juror H.'s encounters with the pharmacist did not require the court to excuse her. We recognize that, like Moon, Juror H. had interacted with the pharmacist at the pharmacy involved in this case. The trial court considered this circumstance, but ultimately concluded that Juror H. would nevertheless remain fair and impartial. And while the circumstances of Juror H.'s encounters with the pharmacist were somewhat similar to Moon's encounter with the pharmacist, as the trial court noted, Juror H. did not have an "ongoing relationship" with the pharmacist. See People v. Drake, 841 P.2d 364, 367 (Colo.App.1992) ("Given ... the very slight acquaintance between the juror and witness, we find no abuse of discretion by the trial court in its determination that the juror was impartial and, therefore, find no abuse of discretion in its denial of the defendant's motion for mistrial."). Without evidence that Juror H. was biased or could not fairly evaluate the pharmacist's testimony, the court was not required to dismiss her. Cf. Christopher, 896 P.2d at 877 (court did not abuse discretion in not replacing juror who knew the prosecution's "principal" witness).
¶ 31 Nor did the pharmacist's role in the trial require the court to excuse Juror H. After reviewing the record, we are not convinced that the pharmacist played a crucial role in the case. The disputed issue was who altered the prescription. The pharmacist did not claim to have personal knowledge on that point.
¶ 32 Although Moon asserts on appeal that she likely would have used a peremptory challenge to excuse Juror H., she did not make this representation to the court after Juror H. disclosed her relationship with the pharmacist. And even if she had done so, allowing a defendant fewer peremptory challenges than authorized does not, in and of itself, require reversal. See People v. Novotny, 2014 CO 18, ¶ 27, 320 P.3d 1194 ; see also Christopher, 896 P.2d at 880 ("[T]he court of appeals erred in presuming prejudice from [the juror's] inadvertent failure to recognize [the witness's] name as it was read off during jury selection, which thus precluded the defendant from exercising his peremptory challenge, if he so desired.").
¶ 33 In sum, the court did not abuse its discretion in allowing Juror H. to remain on the jury because the record does not demonstrate that her relationship with the pharmacist prevented her from fairly deciding the case based on the law and the evidence.
IV. Conclusion
¶ 34 The judgment is affirmed.
JUDGE GRAHAM and JUDGE BOORAS concur.

See § 18-18-102(23)(a), C.R.S.2014 (defining "order" as a prescription order which authorizes the dispensing of a single drug or device).